THE RESERVE AT HERITAGE VILLAGE ASSOCIATION v
WARREN FINANCIAL ACQUISITION, LLC

Docket No. 317830. Submitted April 1, 2014, at Detroit. Decided May 6,
2014, at 9:05 a.m.

On January 11, 2012, The Reserve at Heritage Village Associa-
tion, an association of condominium coowners, brought an
action in the Macomb Circuit Court against Warren Financial
Acquisition, LLC (Warren), the titleholder of 76 of the 205 units
in the condominium development. Plaintiff alleged that, since
October 2010, Warren had failed to pay association dues for the
units it owned. Plaintiff sought foreclosure of its condominium
association lien on those units and collection of the unpaid
assessments. In November 2005, Winnick Heritage Village,
LLC, had acquired title to 150 units in the development from
the developer, Heritage Village Single Family, Inc. (HVSF). Fifth
Third Bank acquired a mortgage on 76 of the Winnick units.
Fifth Third assigned its mortgage interest to Warren, and
Winnick conveyed its 76 units to Warren by covenant deed,
which provided that the transfer was without merger of the
mortgage interest. After plaintiff filed suit, Warren assigned the
mortgage to Reserve Mortgage Holding, LLC, which commenced
foreclosure proceedings and purchased the 76 units by sheriff's
deed. On July 16, 2012, plaintiff filed a first amended complaint,
adding as defendants the developer, HVSF; Gary Sakwa, the
principal of Warren, the developer, and several other entities;
Nick Donofrio, a former director and officer of plaintiff; White-
hall Property Management, Inc.; Christine Metiva; Stanley L.
Scott; and others. The amended complaint also added 19 new
counts. Reserve Mortgage Holding, LLC, then intervened, seeking a
declaratory judgment to quiet title, asserting that its foreclosure
extinguished all encumbrances by plaintiff. Plaintiff subsequently
filed a second amended complaint on September 14, 2012, adding
Reserve Mortgage Holding, Winnick, and David A. Gans as
parties, and adding another nine counts. After considering
several motions, the court, John C. Foster, J., issued an opinion
and order in which it vacated the assignment of the mortgage
from Warren to Reserve Mortgage Holding and vacated the
foreclosure sale. The court ordered that the non-merger

clause in the conveyance from Winnick to Warren be given effect, and that Warren could proceed with a foreclosure of its units. The court granted defendants' motion for partial summary disposition with regard to Counts IV through XXX of plaintiff's second amended complaint, dismissing those counts. The Court of Appeals granted plaintiff's interlocutory application for leave to appeal.

The Court of Appeals *held*:

1. When the holder of a real estate mortgage becomes the fee owner, the former estate is generally merged in the latter. This rule, however, is subject to the exception that when it is to the interest of the mortgagee and it is the mortgagee's intention to keep the mortgage alive, there is no merger unless the rights of the mortgagor or third persons are affected thereby. In this case, Warren was not seeking to protect itself from the claims of junior lienholders for debts incurred by Winnick. Rather, Warren was seeking to avoid paying the debt it incurred to plaintiff, which is a third party affected by the nonmerger. Although there were no assessments due at the time of the conveyance containing the nonmerger clause, the time for considering the effect on a third party is not limited to the time of the transaction. A determination of nonmerger would allow Warren to avoid paying the debt it incurred to plaintiff, because if there was no merger, Warren could foreclose and extinguish plaintiff's lien. Therefore, despite the express intention in the conveyance for nonmerger, there was a merger of the mortgage and the fee title. As a result, Warren could not foreclose on the mortgage, and the trial court abused its discretion by ruling that Warren could foreclose.

2. Under MCL 559.276(1), the following limitations apply in a cause of action arising out of the development or construction of the common elements of a condominium project, or the management, operation, or control of a condominium project: (1) if the cause of action accrues on or before the transitional control date, a person shall not maintain an action against a developer, residential builder, licensed architect, contractor, sales agent, or manager of the project later than three years after the transitional control date or two years after the date on which the cause of action accrued, whichever occurs later, and (2) if the cause of action accrues after the transitional control date, a person shall not maintain an action against a developer, residential builder, licensed architect, contractor, sales agent, or manager of a condominium project later than two years after the date on which the cause of action accrued. The term "transitional control date" means the date on which the board of directors for an association

of coowners takes office pursuant to an election in which the votes that may be cast by eligible coowners unaffiliated with the developer exceed the votes that may be cast by the developer. This statute of limitations clearly applied to developer HVSF and Whitehall, the manager. The statute of limitations also applied to the remaining defendants. The Condominium Act, MCL 559.101 *et seq.*, states in MCL 559.235 that successive developers must comply with the act in the same manner as a developer before selling any units. Accordingly, the act's statute of limitations also applied to successive developers such as Warren and Winnick. Moreover, plaintiff's arguments generally suggested that all the defendants in this case should be considered one party as agents or alter egos of the others. Plaintiff, for instance, asserted that the amended complaints did not add any new parties. Given plaintiff's arguments in that regard, the statute of limitations set forth in MCL 559.276(1) applied to all the defendants.

3. The period of limitations set forth in MCL 559.276(1) applies to causes of action arising out of the development or construction of the common elements of a condominium project, or the management, operation, or control of a condominium project. "Common elements" means the portions of the condominium project other than the condominium units. MCL 559.276(1) clearly applied to Counts IV, VI, and VIII, which alleged breaches related to the design, construction, and delivery of the common elements, as did Counts V, VII, IX, X, and XI. Counts XII through XXVII all pertained to an alleged fraudulent scheme carried out by defendants. These counts arose out of the management of the project because the allegations indicated that the fraudulent scheme was an integral part of the management and operation of the condominium project. Counts XXVIII through XXX concerned the allegedly fraudulent conveyance from Warren to Reserve Mortgage Holding. These counts thus concerned the management of the condominium project in light of the fact that plaintiff alleged that Warren, Reserve Mortgage Holding, and the other defendants connected to Sakwa were really one entity that controlled the management of the project. Accordingly, MCL 559.276(1) applied to Counts IV through XXX.

4. In an interrogatory response, plaintiff acknowledged that the transitional control date was January 27, 2009, but subsequently asserted that it used the term incorrectly and that the transitional control date had not yet occurred. However, plaintiff's second amended complaint also suggested that the transitional control date was January 27, 2009, and the allegations in plaintiff's complaint had to be accepted as true unless contra-

dicted by documentary evidence. There was no evidence contradicting the complaint's suggestion that the transitional control date was January 27, 2009. Thus, the trial court did not err by finding that the transitional control date was January 27, 2009.

5. Under MCL 559.276(1)(a), if plaintiff's causes of action accrued before January 27, 2009, plaintiff had until January 27, 2012, at the latest, to bring suit. Under MCL 559.276(1)(b), if plaintiff's causes of action accrued after January 27, 2009, plaintiff had until two years after the date on which the causes of action accrued to bring suit. The causes of action set forth in Counts IV through IX of plaintiff's second amended complaint—relating to the delivery and development of the complex, which occurred in 2005—were required to be brought by January 27, 2012. The physical defects were not concealed, so there was no fraudulent concealment that might have tolled the running of the period of limitations. And the allegations in plaintiff's amended complaints, raising Counts IV through XXX, did not relate back to the original complaint because the claims in the amended complaints did not arise out of the conduct, transaction, or occurrence set forth in the original complaint, given that the original complaint only concerned Warren's alleged failure to pay association dues. Accordingly, Counts IV through IX were brought after the period of limitations had expired and were time-barred. The causes of action in Counts XII through XXVII, concerning the alleged fraudulent scheme, accrued in December 2008 or March 2009. There was no fraudulent concealment of this scheme given that plaintiff was aware of a possible cause of action by March 3, 2009, when it became aware of the missing association dues. Given that Counts XII through XXVII did not relate back to the filing of the original complaint, like Counts IV through IX, they were brought after the period of limitations had expired and were time-barred. The causes of action in Counts XXVIII through XXX concerned the 2012 transfer of the mortgage to Reserve Mortgage Holding and were not time-barred. Nonetheless, Counts XXVIII through XXX were moot because plaintiff agreed with the vacation of the mortgage transfer. Therefore, the trial court did not err by dismissing Counts IV through XXX of plaintiff's second amended complaint.

That portion of the trial court's order concluding that Warren could foreclose on the mortgage because there was no merger reversed; dismissal of Counts IV through XXX of plaintiff's second amended complaint affirmed; case remanded to the trial court for further proceedings.

PROPERTY — MORTGAGES — MERGER WITH FEE ESTATE — EFFECT ON THIRD
    PARTIES.

When the holder of a real estate mortgage becomes the fee owner,
the former estate is generally merged in the latter, but when it is
to the interest of the mortgagee and it is the mortgagee's intention
to keep the mortgage alive, there is no merger unless the rights of
the mortgagor or third persons are affected thereby; the time for
considering the effect on a third party is not limited to the time of
the transaction.

*The Meisner Law Group, PC* (by *Robert M. Meisner*
and *Daniel P. Feinberg*), for plaintiff.

*Kirk, Huth, Lange & Badalamenti, PLC* (by *Robert
W. Kirk, Raechel M. Badalamenti,* and *Robert T. Car-
ollo, Jr.*), *Merigan Law Firm, PLC* (by *Gary Merigan*),
and *Sable Law Firm PC* (by *Richard J. Sable*), for
defendants.

Before: DONOFRIO, P.J., and CAVANAGH and JANSEN, JJ.

PER CURIAM. Plaintiff, The Reserve at Heritage Village
Association, appeals by leave granted the order granting
declaratory relief to defendant Warren Financial Acquisi-
tion, LLC (Warren), and defendant/intervening plaintiff
Reserve Mortgage Holding, LLC (Reserve), and grant-
ing partial summary disposition to defendants on
Counts IV through XXX of plaintiff's second amended
complaint. We affirm in part, reverse in part, and
remand.

The Reserve at Heritage Village is a condominium
complex with 205 units. In November 2005, Winnick
Heritage Village, LLC (Winnick), acquired fee title to
150 units of the complex from Heritage Village Single
Family, Inc. (HVSF), the developer of the complex. On
November 29, 2005, Fifth Third Bank acquired a mort-
gage on 76 units of The Reserve at Heritage Village,

which were owned by Winnick.[1] In December 2005, HVSF sold the other 55 units to Canvasser Heritage, LLC (Canvasser).[2]

Fifth Third Bank assigned the mortgage to Warren, and on May 18, 2009, Winnick conveyed the 76 units to Warren by covenant deed, which provided that the transfer was "without merger of the Mortgage dated as of November 29, 2005 . . . ." On December 7, 2011, plaintiff recorded a lien for unpaid condominium assessments against Warren.

Following the initiation of plaintiff's lawsuit to collect the unpaid condominium assessments against Warren, filed on January 11, 2012, Warren assigned the mortgage to Reserve on April 18, 2012. Reserve then commenced foreclosure proceedings and purchased the 76 units on July 20, 2012, by sheriff's deed.

On January 11, 2012, plaintiff filed a complaint against Warren, alleging that Warren failed to pay condominium assessments. In Count I, plaintiff sought to foreclose on its lien for the unpaid assessments. In Count II, plaintiff sought to collect the unpaid assessments in the amount of $205,884.[3]

---

[1] According to plaintiff's second amended complaint, a mortgage was also granted to HVSF.

[2] Plaintiff also filed suit against Canvasser, Mark A. Canvasser, and Mound Warren Holdings, LLC (the Canvasser defendants) in Lower Court No. 2012-0594-CH. On October 3, 2012, the trial court consolidated plaintiff's case against Warren and the other defendants with its case against the Canvasser defendants. On May 1, 2013, the trial court entered an order granting plaintiff's motion for partial summary disposition with regard to Canvasser and Mound, and on Count III of Mound's counter-complaint.

[3] At the time of oral arguments before this Court, plaintiff indicated that the amount due is now over $500,000. The trial court, concluding that Warren could foreclose on the mortgage, did not decide whether Warren was liable for the assessments. The trial court also noted that the parties disputed whether Warren was a developer or successor developer.

On July 16, 2012, plaintiff filed its first amended complaint. Plaintiff added the following parties as defendants: HVSF, Heritage Village Master Community Association (HVMCA), Grand/Sakwa Properties, LLC, Grand/Sakwa of Warren, LLC, Nick Donofrio, Whitehall Property Management, Inc. (Whitehall), Christine Metiva, and Stanley L. Scott. Plaintiff also added Counts III through XXI.

On August 17, 2012, Reserve filed a motion to intervene. Reserve claimed that it had commenced foreclosure proceedings against Warren and that Reserve became the owner of the 76 units on July 20, 2012, or July 27, 2012, when Warren executed a waiver of statutory and equitable rights of redemption to Reserve. Reserve argued that its foreclosure extinguished all encumbrances by plaintiff. On August 27, 2012, a stipulated order was entered granting Reserve's motion to intervene. On August 28, 2012, Reserve filed an intervening complaint against plaintiff. In Count I, Reserve sought a declaratory judgment to quiet title. In Count II, Reserve claimed that plaintiff slandered the title of the 76 units. In Count III, Reserve alleged that plaintiff breached the Condominium Act, MCL 559.101 *et seq.*, and the condominium association bylaws.

On September 14, 2012, plaintiff filed its second amended complaint. Plaintiff added the following parties as defendants: Reserve, David A. Gans, and Winnick. Plaintiff alleged that from December 1, 2005, to September 4, 2008, the Sakwa defendants (Gary Sakwa, Warren, HVSF, Grand/Sakwa Properties, LLC, and Grand/Sakwa of Warren, LLC), Donofrio, HVMCA, Whitehall, Winnick, Canvasser, and Metiva collected only a portion of the actual assessments applicable to the Winnick and Canvasser units, failed to collect annual assessments applicable to the Winnick and

Canvasser units, and failed to collect the master association assessments applicable to the Winnick and Canvasser units. Plaintiff claimed that those defendants, nonetheless, paid HVMCA the full amount of master association assessments from plaintiff's funds. Plaintiff further alleged that on October 8, 2008, the Sakwa defendants, HVMCA, and their agents agreed not to pursue collection of any of the assessments from the period of December 1, 2005, to September 4, 2008. Plaintiff claimed that, after September 4, 2008, the Sakwa defendants, HVMCA, and their agents continued to pay master association assessments, although plaintiff was never paid such assessments. Plaintiff alleged that the Sakwa defendants, HVMCA, and their agents engaged in a fraudulent scheme, in which they charged discounted assessments, failed to collect any assessments, paid the assessments to HVMCA even though they were never collected, and then refused to cause HVMCA or the Sakwa defendants to maintain, repair, and replace the "berm areas" of the complex. Plaintiff claimed that the fraudulent scheme continued while Whitehall was the managing agent from September 2008 through December 12, 2010.

Plaintiff's second amended complaint contained the following counts: foreclosure of condominium association lien (Count I), collection of unpaid assessments (Count II), collection of unpaid assessments—Winnick (Count III), breach of contract—Sakwa defendants (Count IV), breach of contract—Winnick defendants (Winnick and Gans) (Count V), breach of master deed covenants—Sakwa defendants (Count VI), breach of master deed covenants—Winnick (Count VII), breach of warranty—Sakwa defendants (Count VIII), breach of warranty (Count IX), breach of contract—defendant Whitehall (Count X), breach of covenants (Count XI), conversion and embezzlement (Count XII), civil

conspiracy—all defendants (Count XIII), concert of action (Count XIV), breach of fiduciary duty—HVMCA and Sakwa (Count XV), breach of fiduciary duty—Donofrio and Gary Sakwa (Count XVI), breach of fiduciary duty—Whitehall (Count XVII), breach of fiduciary duty—Metiva (Count XVIII), breach of fiduciary duty—defendant director Scott (Count XIX), fraudulent misrepresentation (Count XX), negligent misrepresentation (Count XXI), unjust enrichment/quantum meruit—Sakwa and HVMCA (Count XXII), violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.* (Count XXIII), violation of the Condominium Act (Count XXIV), declaratory relief/piercing the separate entity veil (Count XXV), declaratory relief/piercing the limited liability company veil (Count XXVI), declaratory relief—partnership/amalgamation of interests (Count XXVII), declaratory relief (Count XXVIII), slander of title (Count XXIX), and quiet title (Count XXX).

The order appealed addressed three motions. First, on March 6, 2013, Warren and Reserve sought a declaratory order and partial stay of the proceedings. They proposed that the trial court enter an order (1) setting aside the assignment of the mortgage from Warren to Reserve and the foreclosure sale and sheriff's deed to Reserve, (2) staying the proceedings regarding Counts I, II, XXV, XXVIII, XXIX, and XXX of plaintiff's second amended complaint and the entire intervening complaint, and (3) dismissing all counts of plaintiff's second amended complaint that referred to irregularities in the assignment from Warren to Reserve. They argued that Warren would then foreclose on the mortgage, most likely be the successful bidder at the foreclosure sale, and demand scheduling of the 2012 annual meeting and special meeting. Warren and Reserve argued that the assessments would be extinguished, Counts I, II, XXV, XXVIII, XXIX, and XXX would be

moot, and the intervening complaint would be moot. Second, on March 7, 2013, defendants moved for partial summary disposition on Counts IV through XXX of plaintiff's second amended complaint, claiming plaintiff lacked standing and that Counts IV through XXX were time-barred. Third, on March 18, 2013, plaintiff sought leave to reschedule the hearing on its second motion for partial summary disposition and for partial stay of the proceedings.

On March 25, 2013, the trial court entered an order stating that the parties agreed to the relief requested in the motion for a declaratory order and partial stay of the proceedings, except that plaintiff objected to the nonmerger clause and a partial stay of the proceedings.[4] The trial court requested briefing on the merger issue in order for it to address the validity and enforceability of the mortgage and Warren's ability to foreclose.

Following briefing and a hearing on the motions, the trial court issued an opinion and order. The trial court concluded that the parties intended to keep the mortgage alive and, at the time of the conveyance from Winnick to Warren there were no assessments due. Accordingly, it found that at the time of the conveyance containing the nonmerger clause, the nonmerger had no effect on the rights of third parties. It further found that plaintiff's position was made no worse by the nonmerger because, before the conveyance from Winnick to Warren, Warren held a mortgage and could have foreclosed at any time. The trial court declined to decide whether Warren would continue to be liable for the assessments after the foreclosure. The trial court granted Warren and Reserve's motion, in part, set aside

---

[4] Despite setting aside the conveyance to Reserve, it does not appear that the trial court dismissed Counts XXVIII through XXX of the second amended complaint or the intervening complaint.

the assignment to Reserve and the foreclosure sale, and ordered that Warren had the power to foreclose. The trial court denied Warren and Reserve's requests to (1) stay the proceedings on Counts I, II, XXV, XXVIII, XXIX, and XXX, (2) dismiss all counts referring to irregularities in the assignment or alleging fraudulent transfer, and (3) stay all motions held in abeyance by a previous order.

The trial court concluded that the bylaw provisions purporting to restrict plaintiff's right to initiate litigation contravened MCL 450.2261 and, thus, were unenforceable. Accordingly, it ruled that plaintiff did not lack standing. The trial court further found no question of material fact that the transitional control date was January 27, 2009, on the basis of plaintiff's interrogatory response and the fact that control had clearly passed from the developer to the board of directors based on its ability to prosecute this case. It found that plaintiff's first amended complaint, which first raised the factual allegations serving as the factual predicate for Counts IV through XXX, was not filed until July 16, 2012, more than three years after the transitional control date, and, thus, were time-barred by MCL 559.276(1). The trial court also determined that plaintiff was on notice of the existence of the facts underlying Counts IV through XXX on March 9, 2009, and, thus, should have filed suit by March 9, 2011. The trial court dismissed Counts IV through XXX because the amended complaint was untimely.

Finally, the trial court granted plaintiff's request for leave to reschedule its motion for partial summary disposition against Warren. The trial court denied plaintiff's request for a stay of all other matters.

On August 1, 2013, the trial court denied plaintiff's motion for partial reconsideration, concluding that

MCL 559.276 applied to Warren and Winnick as successive developers and to the other defendants either directly or because they were alleged to be the agents or alter egos of another defendant to whom the statute applied directly. It further concluded that the statute applied to Counts XXVIII through XXX because the claims arose out of the control of the condominium project. Finally, it ruled that the amendments did not relate back because they added wholly new parties.

On September 30, 2013, we granted leave to appeal, expedited the appeal, granted the motion for stay pending appeal, and stayed further proceedings pending the resolution of the appeal.[5] *Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, unpublished order of the Court of Appeals, entered September 30, 2013 (Docket No. 317830). On November 20, 2013, we denied Warren's motion to lift the stay of proceedings. *Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket No. 317830).

### I. MERGER

Plaintiff contends that the equitable exception to the merger doctrine is not applicable and the trial court erred by concluding that the mortgage and fee title did not merge at the time of the conveyance from Winnick to Warren. We agree.

#### A. PRESERVATION AND STANDARD OF REVIEW

"Generally, an issue is not properly preserved if it is not raised before, addressed by, or decided by the lower court or administrative tribunal." *Gen Motors Corp v*

---

[5] Nonetheless, the sale had already taken place, as evidenced by the sheriff's deed filed with this Court.

*Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). The trial court concluded that the parties intended to keep the mortgage alive and, at the time of the conveyance containing the nonmerger clause, the nonmerger had no effect on the rights of third parties because no assessments were due. It ruled that plaintiff's position was made no worse by the nonmerger. Thus, this issue is preserved.

Defendants contend that plaintiff failed to preserve its equitable arguments. Although it does not appear that plaintiff used the term "unclean hands" in the lower court, it did make equitable arguments and essentially made the same arguments that it makes on appeal—that Warren is seeking to protect itself from having to pay its own debt, the equities demand finding a merger, and the rationale and purposes of the antimerger exception do not apply. Accordingly, this issue is preserved. Regardless, we "may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* at 387. Resolution of the issue of equity and "unclean hands" is necessary for a proper determination of the case. Accordingly, we may overlook the preservation requirement.

"We review the trial court's decision to grant or deny declaratory relief for an abuse of discretion." *Guardian Environmental Servs, Inc v Bureau of Constr Codes & Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837

NW2d 449 (2013) (citation and quotation marks omitted). "[W]e review equitable issues de novo." *Id.*

## B. DISCUSSION

In *Byerlein v Shipp*, 182 Mich App 39, 48; 451 NW2d 565 (1990), this Court stated:

> In Michigan, the equitable rule regarding merger is much the same as that in California:
>
> > There is no doubt about the general rule that when the holder of a real estate mortgage becomes the owner of the fee, the former estate is merged in the latter. This rule is, however, subject to the exception that when it is to the interest of the mortgagee and is his intention to keep the mortgage alive, there is no merger, unless the rights of the mortgagor or third persons are affected thereby. [*Anderson v Thompson*, 225 Mich 155, 159; 195 NW 689 (1923).]
>
> Further:
>
> > The intention is controlling. It is either expressed or is implied from the circumstances of the transaction. If it is to the interest of the mortgagee to keep the mortgage alive, the intention to do so will be implied; for it is presumed that a man intends to do that which is to his advantage. But if the intention to merge the estates is expressed, the fact that it is to his benefit to keep the mortgage alive is immaterial. [*First National Bank of Utica v Ramm*, 256 Mich 573, 575; 240 NW 32 (1932).]

It is "the expressed intention at the time of the transaction" that is controlling. *First Nat'l Bank*, 256 Mich at 577.

In *Union Bank & Trust Co, NA v Farmwald Dev Corp*, 181 Mich App 538, 547-548; 450 NW2d 274 (1989), this Court concluded that a third party's rights "were not affected by the intention to keep the mort-

gage alive inasmuch as it was already aware that its mortgage was junior to [the bank's] mortgage." See also *Titus v Cavalier*, 276 Mich 117, 121; 267 NW 799 (1936) (concluding that where the individual knew he was receiving a junior mortgage, his rights were not affected by the intent to keep the mortgage alive); *Clark v Fed Land Bank of St Paul*, 167 Mich App 439, 445; 423 NW2d 220 (1987) (concluding that "plaintiff's rights were not affected by the intention to keep the mortgage alive, for she knew her judgment lien was subject to a first mortgage pursuant to the judgment of divorce"). In *Tower v Divine*, 37 Mich 443, 446 (1877), the Michigan Supreme Court concluded that the junior mortgagee's position was "made no worse . . . ."

In *US Leather, Inc v Mitchell Mfg Group, Inc*, 276 F3d 782, 787-789 (CA 6, 2002), the Sixth Circuit, applying Michigan law, found merger, despite an express nonmerger clause, because of the effect on a third party. Mitchell Automotive, Inc. (Mitchell Automotive), owed over $1.5 million to United States Leather, Inc. (USL), by early 1998 and had also received over $4.5 million in loans from its parent corporation, Mitchell Corporation of Owosso (Mitchell Corp.). *Id*. at 785. In April 1998, Lamont Group, Inc. (Lamont Group), purchased Mitchell Automotive's assets and granted Mitchell Automotive a security interest and a mortgage. *Id*. Lamont Group also assumed the debt owed USL. *Id*. A few days later, USL filed suit to recover on the debt. *Id*. In May 1998, Mitchell Automotive granted Mitchell Corp. a security interest to secure its existing and future debt. *Id*. Lamont Group defaulted and, in November 1998, delivered a quitclaim deed to Mitchell Automotive, in lieu of foreclosure, which included a nonmerger clause. *Id*. In January 1999, a consent judgment was entered in favor of USL against Mitchell

Automotive and Lamont Group. *Id.* USL claimed that Mitchell Corp.'s security interest was extinguished by merger. *Id.* at 786.

The court stated, "As the Michigan courts have explained, the purpose of declining to find a merger is to allow a mortgagee/lender to protect itself from the claims of junior lienholders of the mortgagor/borrower." *Id.* at 787. The court concluded "that equitable considerations preclude Mitchell Automotive from avoiding merger when the effect is not to protect its own interests from the creditors of the Lamont Group (the mortgagor), but rather to prefer the debt owed to its parent corporation over the debt owed to USL as a third party." *Id.* at 788. The court further found that USL's judgment was not expressly made subject to Mitchell Corp.'s security interest in the mortgage and USL's notice of Mitchell Corp.'s claim was "not akin to the lienholder's express knowledge of the first mortgagee's superior rights in *Farmwald* and *Clark*." *Id.*

In this case, the trial court concluded that the parties intended to keep the mortgage alive based on the language of the covenant deed. It further concluded that, at the time of the conveyance containing the nonmerger clause, there were no assessments due and, accordingly, the nonmerger had no effect on the rights of third parties. The trial court also ruled that plaintiff's position was made no worse by the nonmerger because, before the conveyance from Winnick to Warren, Warren held a mortgage and could have foreclosed. The trial court granted Warren and Reserve's motion, in part, setting aside the assignment to Reserve and the foreclosure sale, and ordered that Warren had the power to foreclose on the mortgage.

Plaintiff argues that the rationale and purposes of the exception to the merger rule do not apply because

Warren is not seeking to protect itself from the claims of junior lienholders for debts incurred by Winnick, but to protect itself from the claims of its own creditor. Plaintiff contends that Warren has no basis to seek equity under the doctrine of unclean hands in order to extinguish debt that it owes. Plaintiff further argues that its interest could be lost if the exception to the merger rule is applied.

Fifth Third Bank assigned the mortgage to Warren and, on May 18, 2009, Warren became the owner of the fee title through the covenant deed. Although generally the fee and the mortgage merge, the covenant deed expressly provided that it was "without merger." See *Byerlein*, 182 Mich App at 48. This intent, expressed at the time of the transaction, is controlling. *First Nat'l Bank*, 256 Mich at 577; *Byerlein*, 182 Mich App at 48. Given this express intention, whether nonmerger was to the benefit of Warren is "immaterial." *Byerlein*, 182 Mich App at 48 (citation and quotation marks omitted).

Despite the express intent for nonmerger, we agree with plaintiff that the purpose of the exception to the general merger rule, as expressed in *US Leather*, 276 F3d at 787, does not apply in this case because Warren is not seeking to protect itself from the claims of junior lienholders for debts incurred by Winnick.[6] Similar to Mitchell Automotive, which was seeking to avoid paying its own debt to USL and prefer the debt owed to its

[6] Plaintiff's second amended complaint alleged that the scheme to collect only a portion of the assessments due took place from approximately December 1, 2005, to September 4, 2008. Plaintiff also alleged that when Warren acquired the units in May 2009, the assessments applicable to Warren were understated and Warren was obligated to pay all assessments. However, the trial court relied on plaintiff's interrogatory response, in which it stated that no assessments were paid after Whitehall was terminated (2010). Thus, it is Warren's unpaid assessments that are at issue.

parent corporation, *id.* at 788, Warren is seeking to avoid paying its debt to plaintiff. A finding of nonmerger would allow Warren to avoid paying the debt it incurred to plaintiff.

The trial court erred by finding that plaintiff was not a third party affected by the nonmerger because there were no assessments due at the time of the conveyance containing the nonmerger clause. Although it is necessary to consider the party's intent for nonmerger at the time of transaction, see *First Nat'l Bank*, 256 Mich at 577, the time for considering the effect on a third party is not limited to the time of the transaction. In *US Leather*, 276 F3d at 785, although the debt owed to USL existed at the time of the conveyance containing the nonmerger clause, the consent judgment was not entered until after the conveyance. Similarly, plaintiff did not obtain a lien for the unpaid condominium assessments until after the conveyance containing the nonmerger clause. Nonetheless, plaintiff is a third party affected by the nonmerger.

The trial court's finding that plaintiff's situation was made no worse by the nonmerger is also erroneous. The trial court's finding of nonmerger meant that Warren could foreclose and extinguish plaintiff's lien. As the trial court found, it is unclear whether the foreclosure would extinguish the past-due assessments under MCL 559.158.

In conclusion, despite the express intent to keep the mortgage alive, there was a merger of the mortgage and the fee title because a finding of nonmerger would affect the rights of plaintiff. See *Byerlein*, 182 Mich App at 48. Because the fee and the mortgage merged, Warren could not foreclose on the mortgage. The trial court abused its discretion by ordering that Warren could

foreclose. We remand for the trial court to vacate and
set aside Warren's foreclosure and the subsequent sale.[7]

### II. MCL 559.276(1)

Plaintiff contends that its claims were not time-
barred by MCL 559.276(1). We conclude that the trial
court properly dismissed Counts IV through XXVII on
the basis of the statute of limitations. The trial court
erred by finding that Counts XXVIII through XXX were
time-barred; however, dismissal was proper on other
grounds.

#### A. PRESERVATION AND STANDARD OF REVIEW

Plaintiff raised the same arguments in the trial court
as on appeal. The trial court found that the transitional
control date was January 27, 2009, plaintiff's claims
were time-barred by MCL 559.276(1), and plaintiff was
on notice of the facts underlying its claims by March 9,
2009. In denying plaintiff's motion for reconsideration,
the trial court found that MCL 559.276 applied to all
defendants, Counts XXVIII to XXX were related to
control of the project, and the relation-back doctrine did
not apply. Even if some of plaintiff's arguments were
not preserved because they were first raised by plaintiff
and addressed by the trial court in the motion for
partial reconsideration, see *Vushaj v Farm Bureau Gen
Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758
(2009), we "may overlook preservation requirements
when the failure to consider an issue would result in
manifest injustice, if consideration is necessary for a

---

[7] We note that the trial court also set aside the assignment to Reserve
and the foreclosure sale and did not abuse its discretion in doing so.
Contrary to plaintiff's assertion at oral argument, the setting aside of the
assignment and sale to Reserve was not conditioned on a finding of
nonmerger.

proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Gen Motors Corp*, 290 Mich App at 387. Resolution of all of plaintiff's arguments is necessary for a proper determination of the case.

Although defendants' motion for partial summary disposition was brought pursuant to MCR 2.116(C)(5), (7), and (8), the trial court dismissed Counts IV to XXX on the basis of the statute of limitations.

> MCR 2.116(C)(7) allows a party to file a motion for summary disposition on the ground that a claim is barred because of the expiration of the applicable period of limitations. A movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. Moreover, the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. Appellate review of a trial court's summary disposition ruling pursuant to MCR 2.116(C)(7) is de novo. [*Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 553; 837 NW2d 244 (2013) (citations omitted).]

"In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013). "Questions of statutory interpretation are also reviewed de novo." *Fisher Sand & Gravel Co*, 494 Mich at 553.

### B. DISCUSSION

MCL 559.276(1) provides:

> The following limitations apply in a cause of action arising out of the development or construction of the

common elements of a condominium project, or the management, operation, or control of a condominium project:

(a) If the cause of action accrues on or before the transitional control date, a person shall not maintain an action against a developer, residential builder, licensed architect, contractor, sales agent, or manager of a condominium project later than 3 years after the transitional control date or 2 years after the date on which the cause of action accrued, whichever occurs later.

(b) If the cause of action accrues after the transitional control date, a person shall not maintain an action against a developer, residential builder, licensed architect, contractor, sales agent, or manager of a condominium project later than 2 years after the date on which the cause of action accrued.

In order to determine whether plaintiff's claims are time-barred, it is necessary to consider (1) whether the statute applies to each defendant, (2) whether the statute applies to each cause of action, (3) if and when the transitional control date occurred, and (4) when each cause of action accrued. Plaintiff also asserts that the statute of limitations was tolled by fraudulent concealment and that plaintiff's amended complaints relate back to the original complaint.

### 1. APPLICABILITY OF MCL 559.276(1) TO DEFENDANTS

MCL 559.276(1) applies to actions against "a developer, residential builder, licensed architect, contractor, sales agent, or manager of a condominium project . . . ." In ruling on plaintiff's motion for partial reconsideration, the trial court concluded that the statute applied to Warren and Winnick as successive developers and that the remaining defendants fell under MCL 559.276 either directly or because they were alleged to be liable as an agent or alter ego of a defendant that fell under the statute.

Plaintiff contends that the statute only applies to HVSF, the developer, and Whitehall, the manager. Plaintiff argues that (1) the statute clearly does not apply to HVMCA and Scott; (2) the statute does not apply to alter egos or agents, such as Grand/Sakwa, LLC, Grand/Sakwa Warren, LLC, Gary Sakwa, and Donofrio; (3) the statute does not apply to the claims against Sakwa and Donofrio as directors; (4) the statute does not apply to Metiva because she was not the manager; and (5) the statute does not apply to successive developers, such as Warren and Winnick, or Winnick's principal, Gans. Plaintiff contends that other statutes of limitations providing longer periods in which to bring suit apply to the claims against these defendants and, accordingly, the claims are not time-barred.

MCL 559.106(2) provides:

> "Developer" means a person engaged in the business of developing a condominium project as provided in this act. Developer does not include any of the following:
>
> (a) A real estate broker acting as agent for the developer in selling condominium units.
>
> (b) A residential builder who acquires title to 1 or more condominium units for the purpose of residential construction on those condominium units and subsequent resale.
>
> (c) Other persons exempted from this definition by rule or order of the administrator.

It is undisputed that the statute applies to the claims against HVSF, the developer, and Whitehall, the manager. In its second amended complaint, plaintiff referred to Gary Sakwa, Warren, Grand/Sakwa Properties, LLC, Grand/Sakwa of Warren, LLC, HVSF, and Reserve jointly as "Sakwa." Plaintiff also specifically alleged that these entities were the alter egos or mere instrumentalities of Gary Sakwa and

should be considered one entity. Although some claims are against Gary Sakwa and Donofrio as directors of the association and HVMCA, plaintiff alleged that they were working in concert with Sakwa and that Donofrio was the agent or employee of Sakwa. Plaintiff further alleged that HVMCA, the master association, was controlled by Sakwa in 2008, and participated in the fraudulent scheme, and that Donofrio and Metiva were agents of Sakwa. Metiva was also an agent of Whitehall. Accordingly, the statute also applies to the claims against these defendants. Plaintiff's contention that the statute does not apply to agents or alter egos contradicts its later argument, in regard to the relation-back doctrine, that the Sakwa entities are "one party." Although plaintiff only refers to the "Sakwa entities," it argues that the amended complaints did not add any new parties. Thus, it appears that plaintiff is arguing that all defendants should be considered one party.

Similarly, with regard to the claims against Scott, he was a director, which is not listed in the statute. Nonetheless, plaintiff alleged that Warren improperly elected Scott to the board, Scott was part of the fraudulent scheme, Scott acted in concert with Sakwa, and Scott was an agent of Sakwa and HVMCA. Accordingly, the statute applies to the claims against him as well.

With regard to Winnick and Gans, plaintiff alleged that they participated in the development of the complex. Also, plaintiff contends that Winnick may be considered a successive developer and Gans is its agent, but argues that the statute does not apply to successive developers, such as Warren and Winnick. The term "successive developer" is not defined in the definitions sections of the Condominium Act, but is

defined at MCL 559.235(1). As the trial court ruled, because a successive developer must comply with the act in the same manner as a developer before selling any units, MCL 559.235(2)(a), MCL 559.276 applies to actions against a successive developer. Moreover, plaintiff suggests that all defendants are a single party. Accordingly, the statute also applies to the claims against Winnick and Gans.

### 2. APPLICABILITY OF MCL 559.276(1) TO THE CAUSES OF ACTION IN COUNTS IV THROUGH XXX

MCL 559.276(1) applies to causes of action "arising out of the development or construction of the common elements of a condominium project, or the management, operation, or control of a condominium project[.]" " 'Common elements' means the portions of the condominium project other than the condominium units.' " MCL 559.103(7). The trial court found that MCL 559.276(1) barred Counts IV through XXX. In ruling on plaintiff's motion for partial reconsideration, it found that the claims regarding the alleged fraudulent conveyance, Counts XXVIII through XXX, related to the control of the project.

Counts IV, VI, and VIII alleged breaches related to the design, construction, and delivery of the common elements of the condominium complex, among other claims. Accordingly, MCL 559.276(1) applies to each of these causes of action. Counts X and XI alleged, among other claims, breaches relating to the failure to maintain the berm areas—which arise out of the development or construction of the common elements of a condominium project—and to the fraudulent scheme— which, as discussed in the next paragraph, arise out of the management or operation of the condominium project. Although Counts V, VII, and IX refer to the

design, construction, and delivery of the Winnick units (not common elements), Counts V and IX also refer to the drainage system and grading serving those units. Moreover, Count VII also refers to the fraudulent scheme. Thus, MCL 559.276(1) also applies to these causes of action. Although some of these counts allege breaches of the master deed covenants, they nonetheless arise out of the development or construction of the common elements of a condominium project.

With regard to Counts XII through XXVII, the causes of action relate to the alleged fraudulent scheme. These causes of action arise out of the management of the condominium project. Plaintiff contends that the management was incidental to the fraudulent scheme. The statute does not define the phrase "arising out of." The Michigan Supreme Court has considered the meaning of this phrase in other contexts.

> "Arise" is defined as "to result; spring or issue." The Court of Appeals has explained that the language "arising out of the sentencing offense" means that the "sexual penetration of the victim must result or spring from the sentencing offense." . . .
>
> In interpreting an insurance contract containing the language "arising out of," we held that such language requires a " 'causal connection' " that is " 'more than incidental . . . .' " Similarly, in interpreting a workers' compensation statute containing the language "arising out of," we held that this language requires a " ' "causal connection . . . ." ' " [*People v Johnson*, 474 Mich 96, 100-101; 712 NW2d 703 (2006) (citations omitted).]

"Something that aris[es] out of, or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen." *Id.* at 101 (quotation marks omitted; alteration in original).

In its second amended complaint, plaintiff alleged:

> The Fraudulent Scheme . . . consisted of charging the Discounted Assessments, rather than the actual assessments, and then not collecting any assessments, yet wrongfully and illegally paying to the Master Association from The Reserve Association's bank account (the "Diverted Funds") assessments owed by, but which were never collected from, Winnick, Canvasser and, on information and belief, other members of The Reserve Association; and refusing to cause the Master Association and/or Sakwa to maintain, repair and replace the Berm Areas.

These allegations indicate that the fraudulent scheme was an integral part of the management and operation of the condominium project. Thus, the causes of action relating to the fraudulent scheme result, spring, or issue from the management or operation of the condominium project and have more than an incidental connection to the management and operation of the project. See *Johnson*, 474 Mich at 100-101. Thus, MCL 559.276(1) applies to the causes of action in Counts XII through XXVII.

With regard to Counts XXVIII through XXX, plaintiff argues that these causes of action, which relate to the alleged fraudulent conveyance, do not arise out of the "development, etc." of the project. However, MCL 559.276(1) also applies to causes of action "arising out of the . . . management, operation, or control of a condominium project." The conveyance from Warren to Reserve is related to the management, operation, or control of the condominium project given that Warren, Reserve, and the other Sakwa defendants are alleged to be one entity, which controlled the management. Accordingly, the statute applies to these causes of action.[8]

---

[8] Nonetheless, as discussed later in this opinion, these claims are not time-barred.

### 3. TRANSITIONAL CONTROL DATE

MCL 559.110(7) provides: " 'Transitional control date' means the date on which a board of directors for an association of co-owners takes office pursuant to an election in which the votes that may be cast by eligible co-owners unaffiliated with the developer exceed the votes which may be cast by the developer." The trial court stated this definition, but then found that the transitional control date was January 27, 2009, given that plaintiff had indicated in its response to an interrogatory that the transitional control date was January 27, 2009, and given the trial court's belief that control had "clearly passed" in light of plaintiff's ability to prosecute this case. Plaintiff contends that the transitional control date has not yet occurred.

In an interrogatory response, plaintiff acknowledged that the transitional control date was January 27, 2009. Plaintiff's counsel similarly acknowledged that fact at the October 3, 2012 hearing. Plaintiff, however, subsequently argued that the transitional control date had not yet occurred and the statute of limitations had not yet begun to run. Defendant contends that plaintiff is bound by its admission. Plaintiff replies that it incorrectly used the term "transitional control date." Plaintiff further argues that its incorrect statement does not mean that the transitional control date had occurred and notes that defendants were not prejudiced by the admission.

This Court has concluded that a party's negative response to an interrogatory asking whether at the time of an accident he had any physical or mental impairment or disability did not constitute a binding admission precluding the party from arguing that his insanity tolled the running of the period of limitations, noting that the admission was made before the statute of limitations issue had been raised. See *Davidson v*

*Baker-Vander Veen Constr Co*, 35 Mich App 293, 302; 192 NW2d 312 (1971). Similarly, it appears that plaintiff's response was made before the statute of limitations issue was first raised in defendants' August 24, 2012 motion for summary disposition on Counts III through XXI of plaintiff's first amended complaint.

On the other hand, plaintiff's attorney's statement was made after the issue was raised, and more importantly, plaintiff's second amended complaint also suggested that the transitional control date was January 27, 2009. Specifically, plaintiff alleged that before January 2009, HSVF appointed Scott to serve as director of the "developer-controlled Board of Directors . . . ." This suggested that the board of directors was controlled by the developer only before January 2009. Plaintiff also alleged that before the transitional control date, plaintiff was controlled by Sakwa and after the transitional control date, the nondeveloper officers and directors were impeded from discovering the causes of action. Thus, plaintiff alleged that there was a transitional control date and suggested that it was in January 2009. Plaintiff's allegations must be accepted as true, unless contradicted by documentary evidence. See *McLean*, 302 Mich App at 72-73. There is no evidence to contradict the allegation that the transitional control date was January 27, 2009. Plaintiff argues that 106 units are still controlled by the developer (the 76 units owned by Warren and the 30 units owned by Canvasser). However, defendants argue that the developer only controls 76 units (the 76 units owned by Warren). The trial court did not err by finding that the transitional control date was January 27, 2009.

### 4. ACCRUAL

Next, it is necessary to determine when plaintiff's causes of action accrued. Under MCL 559.276(1)(a), if

the cause of action accrued on or before January 27, 2009, plaintiff had until January 27, 2012, at the latest, to bring suit. If the cause of action accrued after January 27, 2009, plaintiff had until two years after the date on which the cause of action accrued to bring suit. MCL 559.276(1)(b).

Plaintiff's original complaint was filed on January 11, 2012; its first amended complaint was filed on July 16, 2012; and its second amended complaint was filed on September 14, 2012. Accordingly, any causes of action that accrued on or before January 27, 2009, and not contained in the original complaint, are barred, unless the amended complaints relate back to the original complaint. Any causes of action that accrued from January 28, 2009, to January 10, 2010, are barred, as they were required to be brought by January 10, 2012, at the latest. Any causes of action that accrued from January 11, 2010, to July 16, 2010, and not contained in the original complaint, are also barred, unless the amended complaints relate back to the original complaint. Any causes of action that accrued after July 16, 2010, are not time-barred. Moreover, the causes of action would not be time-barred if the statute of limitations was tolled by fraudulent concealment.

### a. RELATION-BACK DOCTRINE

MCR 2.118(D) provides:

> An amendment that adds a claim or defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading. In a medical malpractice action, an amendment of an affidavit of merit or affidavit of meritorious defense relates back to the date of the original filing of the affidavit.

"[T]he relation-back doctrine does not conflict with the policy behind the statute of limitations because it still requires the party amending its pleadings to plead the transaction or occurrence that forms the original basis of the lawsuit before the limitations period has expired." *Yudashkin v Holden*, 247 Mich App 642, 652; 637 NW2d 257 (2001). "This Court has previously held that the relation-back doctrine does not extend to the addition of new parties." *Tice Estate v Tice*, 288 Mich App 665, 669; 795 NW2d 604 (2010) (citation and quotation marks omitted). A plaintiff may not "substitute or add a wholly new and different party to the proceedings . . . ." *Miller v Chapman Contracting*, 477 Mich 102, 107; 730 NW2d 462 (2007) (citation and quotation marks omitted).

The trial court concluded that plaintiff's amended complaints did not relate back to the original complaint because they added wholly new parties and claims. Plaintiff argues that its amended complaints relate back to the original complaint because the fraudulent scheme allegations addressed in the amended complaints expanded on the allegations concerning the nonpayment of assessments addressed in the original complaint and because the Sakwa entities are one party.

Plaintiff's original complaint was filed against Warren only. Plaintiff added the remaining defendants in its first and second amended complaints. As discussed earlier, plaintiff alleged that the Sakwa defendants, and suggested that all defendants, were the same entity. It is a close question whether the amended complaints added wholly new and different parties. Nonetheless, the claims in the amended complaints do not arise out of the conduct, transaction, or occurrence set forth in the original complaint. See MCR 2.118(D). In its original complaint, plaintiff sought to recover unpaid con-

dominium assessments on the basis of Warren's alleged failure to pay. Plaintiff did not allege any conduct, transaction, or occurrence other than the failure to pay. It did not plead the transaction or occurrence forming the basis for the claims regarding the fraudulent scheme. See *Yudashkin*, 247 Mich App at 652. Accordingly, plaintiff's first and second amended complaints do not relate back to the original complaint.

### b. FRAUDULENT CONCEALMENT

MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

This Court has stated:

> Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent. [T]he fraud must be manifested by an affirmative act or misrepresentation. Thus, [t]he plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery. [T]here must be concealment by the defendant of the existence of a claim or the identity of a potential defendant, and the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment. If there is a known cause of action there can be no fraudulent concealment

which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know . . . .

For a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action. [*Doe v Roman Catholic Archbishop of the Detroit Archdiocese*, 264 Mich App 632, 642-643; 692 NW2d 398 (2004) (citations and quotation marks omitted; alterations in original).]

A plaintiff is required to plead more than mere silence. *Id*. at 645. However, "[a]n exception to [the general rule requiring an affirmative act or misrepresentation] is that there is an affirmative duty to disclose where the parties are in a fiduciary relationship." *Lumber Village, Inc v Siegler*, 135 Mich App 685, 695; 355 NW2d 654 (1984). This Court has found no fraudulent concealment when the defendants had not concealed changes made to physical property. *Terlecki v Stewart*, 278 Mich App 644, 652; 754 NW2d 899 (2008). In so holding, the Court stated that "[t]he statutory scheme of limitations periods is exclusive and precludes tolling the accrual of a claim based on discovery where no statute tolls the running of the limitations period." *Id*.

The trial court found that the running of the period of limitations was not tolled by fraudulent concealment because plaintiff "was clearly on notice of the existence of the facts underlying Counts IV through XXX by March 9, 2009 at the latest." Plaintiff contends that defendants concealed the fraudulent scheme until December 12, 2010, when Whitehall was terminated.

Plaintiff, however, has failed to plead fraudulent concealment with regard to Counts IV through XI. Those Counts concern physical defects of the complex, but there is no evidence that they were concealed. See *id*.

With regard to Counts XII through XXVII, involving the fraudulent scheme, plaintiff alleged that the fraudulent scheme took place during the period of September 2008 to December 12, 2010. The running of the period of limitations was not tolled by fraudulent concealment with regard to these counts because plaintiff was aware of a possible cause of action by October 8, 2008, or March 3, 2009. See *Doe*, 264 Mich App at 643. On October 8, 2008, a letter was sent to Canvasser indicating that he was being improperly billed. The letter was signed "Christe Langdeau, Community Manager" of the "Reserves at Heritage Village Condominium Association." On March 3, 2009, an e-mail was sent indicating that not all of the lots were paying association dues. The e-mail was signed by Sean House "Community Association Manager" with "Whitehall Property Management." Plaintiff argues that its knowledge of the failure to pay assessments did not constitute notice of the fraudulent scheme, but these correspondences show that plaintiff was aware of a "possible cause of action." *Id.* at 643. Plaintiff is not required to have known *"the details of the evidence by which to establish his cause of action. It is enough that he knows that a cause of action exists in his favor . . . ." Id.* at 647 (citations and quotation marks omitted). Although plaintiff contends that the stealing continued until December 12, 2010, plaintiff had notice of the missing association dues by March 3, 2009, at the latest.[9]

[9] Although plaintiff claims that there was no evidence that any members of the association unaffiliated with the developer knew of the October 8, 2008 letter until 2012, the March 3, 2009 e-mail was sent after the transitional control date. Also, the trial court noted that the response to the March 3, 2009 e-mail was sent by a co-owner and that defendants' counsel represented that the e-mail was sent to all co-owners. Plaintiff does not appear to dispute that it had knowledge of the March 3, 2009 e-mail, but argues that it did not constitute notice of the fraudulent scheme.

With regard to Counts XXVIII through XXX, the alleged fraudulent conveyance did not take place until 2012. Thus, tolling is unnecessary.

### 5. APPLICATION OF MCL 559.276(1) TO COUNTS IV THROUGH XXX

The causes of action set forth in Counts IV through IX relating to the delivery and development of the complex, which occurred in 2005, were required to be brought by January 27, 2012. There was no fraudulent concealment because the physical defects were not concealed. Plaintiff's complaints containing Counts IV through XXX were not filed until July 16, 2012, and September 14, 2012. The amended complaints do not relate back to the original complaint. Accordingly, these claims are time-barred.

The causes of action in Counts XII through XXVII (as well as those in Counts IV through IX involving the fraudulent scheme) accrued in either December 2008 or March 2009. Plaintiff had until either March 3, 2011, or January 27, 2012, to file suit. Plaintiff's complaints containing Counts IV through XXX were not filed until July 16, 2012, and September 14, 2012. There was no fraudulent concealment and plaintiff's amended complaints do not relate back to the original complaint. Accordingly, these claims are time-barred.[10]

The causes of action in Counts XXVIII through XXX relate to the transaction that occurred in 2012. The claims are not time-barred. Nonetheless, defendants argue that these claims are moot. In its response to Warren and Reserve's motion for declaratory relief, plaintiff agreed to dismiss those counts, but argued that Counts XXVIII and XXIX would not be moot to the

---

[10] Some of plaintiff's counts contain multiple claims, but each contains at least one claim that falls under MCL 559.276(1) and is time-barred.

extent that plaintiff was entitled to recover attorney fees. In Count XXVIII, plaintiff sought a declaratory judgment declaring the transaction between Warren and Reserve void and imposing a constructive trust on the property. Plaintiff claimed that the transfer was fraudulent under MCL 566.34 and MCL 566.35, and that the remedies at MCL 566.37 are still available. MCL 566.37(1)(c)(*iii*) authorizes any relief the trial court determines appropriate. In Count XXIX, plaintiff alleged slander of title and sought costs, including attorney fees under MCL 565.108. In Count XXX, plaintiff sought to quiet title. Plaintiff contends that, while Count XXX is moot, the relief sought in Counts XXVIII and XXIX is still available. However, the conveyance to Reserve was not found to be fraudulent or made for the purpose of slandering title; rather, plaintiff agreed to vacate the assignment and the sheriff's sale. Accordingly, those remedies are not available and Counts XXVIII and XXIX are moot. The trial court properly dismissed these counts, albeit for the wrong reason.

We affirm the portion of the trial court's order dismissing Counts IV through XXX, reverse the portion concluding that Warren could foreclose on the mortgage because there was no merger, and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

DONOFRIO, P.J., and CAVANAGH and JANSEN, JJ., concurred.