# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN SAMPSON, JR.,

       Plaintiff-Appellee,

and

MENDELSON ORTHOPEDICS, PC, and
SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER, LLC,

       Intervenors-Appellees,

v

GREGORY JEFFERSON,

       Defendant,

and

HOME-OWNERS INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
July 14, 2016

No. 326561
Wayne Circuit Court
LC No. 13-014880-NF

Before: JANSEN, P.J., and FORT HOOD and BOONSTRA, JJ.

PER CURIAM.

Defendant Home-Owners Insurance Company (defendant) appeals by leave granted[1] the order denying its motion for summary disposition. We affirm.

On December 20, 2012, plaintiff was injured in a car accident on I-96. He was taken by ambulance to a hospital, where he was diagnosed with a fracture of the cervical spine and released with a cervical collar. It is undisputed that he suffered cervical and lumbar spine

---

[1] *Sampson v Jefferson*, unpublished order of the Court of Appeals, entered June 10, 2015 (Docket No. 326561).

-1-

herniations and an injury to his left shoulder in the accident and that surgery was later required. Because plaintiff was a resident relative of defendant's insureds, Bennie and Shirley Croft, at the time of the accident, the claims related to his injuries were submitted to defendant. Plaintiff requested payment for replacement services, such as driving and running errands, which were provided by Ciara Beard. Beard submitted a household services statement for March 2013, which is the statement at issue in this case. The policy that defendant issued to the Crofts contains a general fraud condition, which states, "We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to procurement of this policy or to any occurrence for which coverage is sought."

Defendant acquired surveillance video showing plaintiff driving, lifting objects, and running errands on March 6, 2013, and March 9, 2013. Defendant subsequently filed a motion for summary disposition under MCR 2.116(C)(10), contending that the videotape evidence established that plaintiff engaged in fraud in connection with his claim for replacement services and that his claim for benefits was therefore barred under the fraud condition in the insurance policy. Plaintiff responded that the videotape evidence did not prove that he did not require and receive assistance at other times during those days based on his fluctuating pain levels and that this is an issue of fact for a jury to decide. The trial court agreed with plaintiff, reasoning, "He could have, for all I know, not needed medication until noon and so drove, and lifted a 10- or 15-pound bike not above his waist before noon. And then by later in the afternoon the pain hits, he takes medication, and he needed a ride later that day." The court therefore denied defendant's motion for summary disposition.

Defendant contends that the trial court erred in denying its motion for summary disposition. We disagree.

This Court reviews de novo a denial of a motion for summary disposition. *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014). A motion brought pursuant to MCR 2.116(C)(10) is properly granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*. " 'A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). The trial court considers the evidence in the light most favorable to the nonmovant in deciding a motion for summary disposition under MCR 2.116(C)(10). *Id*.

We apply the rules of contract interpretation to the interpretation of insurance contracts. *Bahri*, 308 Mich App at 424. The language is constructed in order "to give effect to every word, clause, and phrase." *Id*. An undefined term is given its plain and ordinary meaning. *Id*. " 'When the policy language is clear, a court must enforce the specific language of the contract. However, if an ambiguity exists, it should be construed against the insurer.' " *Id*. (citation omitted). This Court has defined the requirements for establishing fraud in this context as follows:

> To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was

made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Id.* at 424-425 (citation and quotation marks omitted).]

We agree with the trial court that there is a genuine issue of material fact regarding whether plaintiff's conduct constituted fraud. Defendant presented several household services statements signed by Beard in support of its motion for summary disposition, including one form for March 2013. The forms requested compensation for replacement services. The form at issue includes space for one month's worth of information. At the top of the form are spaces for identifying information and a space for writing the month and year. There is a key consisting of a list of household chores, designated from A through T. Below that is a blank grid seven squares across, labelled Sunday through Saturday, and five squares down, presumably for the weeks of the month. There is space on the bottom for the caregiver to sign and date the form. No space is provided on the form for the claimant's signature. The form is signed by Beard. Unlike the forms for other months, the March form contains no dates in any of the squares, and all 35 squares have been filled out with handwritten letters designating which of the services listed in the key were actually provided. On some of the dates, the form reflects that Beard drove plaintiff and ran errands on his behalf. However, the form reflects that Beard did not drive plaintiff or run errands on every day of the month.

The surveillance tape recordings do not establish that this household services statement is false. The videotape depicts plaintiff at various times on March 6, 2013 and March 9, 2013. On March 6, 2013, at approximately 10:08 a.m., plaintiff is observed walking into a gas station. A few minutes later, he leaves and drives home. The videotape shows plaintiff driving again at approximately 1:10 p.m. The videotape then depicts plaintiff taking a child's bike out of a car and flipping it around. He also removes a duffle bag from the car. At approximately 1:43 p.m., plaintiff returns to the car and drives off a few minutes later.

The March 9, 2013 videotape depicts plaintiff getting out of his car at approximately 12:25 p.m. Plaintiff then stands and talks to another person. The videotape also shows plaintiff's daughter tugging his hand, and plaintiff pulls her back toward himself. At 12:36 p.m., plaintiff gets into the driver's seat of a car, but then runs back toward a house. At 12:40 p.m., plaintiff returns to the driver's seat of the car. At 12:42 p.m., he gets out of the car and obtains something from the trunk. The videotape depicts plaintiff driving off at 12:47 p.m. At approximately 1:40 p.m., the videotape shows plaintiff getting out of the driver's side of the car. He bends over to pick something off the ground before walking into a store. At 2:13 p.m., plaintiff returns to his car carrying a pizza box and a plastic bag. The videotape shows him balancing his cellular telephone between his neck and hand while carrying the objects. At 2:17 p.m., 2:27 p.m., at 2:56 p.m., the videotape again shows plaintiff walking.

Although the videotape recordings depict plaintiff driving and running errands for a short time on March 6, 2013, and for a few hours on March 9, 2013, the videotape recordings do not establish that the household services statement contained a false representation. The videotape recordings are consistent with plaintiff's deposition testimony. Specifically, plaintiff testified that in March 2013 he stopped wearing his neck brace all the time because his doctor instructed

him not to become dependent on it and because plaintiff did not want to be perceived as disabled. He testified that he began to drive approximately one month after the accident because he had no help and therefore had no choice but to drive. Plaintiff did not indicate that he could drive without pain or without exacerbating his injury. He did not testify that he could drive at any time during the day. Plaintiff had a shoulder injury that prevented him from lifting anything over his head or lifting anything more than 10 or 15 pounds. However, plaintiff explained, "I still had some strength and I was taking a lot of pain medication. So I was in pain, but when I was taking my medication, I wasn't really in that much pain because of the medication." With regard to the replacement services, plaintiff testified that Beard performed all the tasks that plaintiff could no longer do, including cooking and cleaning. He testified that Beard consistently came to his house to help him during the first six months after the accident.

The videotapes only depict plaintiff at several points during the day on March 6, 2013 and March 9, 2013, and they do not depict plaintiff's conduct during every hour of the relevant days. Plaintiff contended that he could perform certain tasks during certain times of the day when his pain level was not too high and his pain medication did not prevent him from doing so. There is nothing depicted on the videotapes that contradicts plaintiff's position or establishes that the services were never performed on those days. Beard is depicted in the March 9, 2013 videotape recording, which further supports plaintiff's contention that Beard provided replacement services for him on the days in question. Additionally, defendant did not prove falsity because the forms do not establish on what dates the driving and errand-running services were claimed. Again, the squares are not prenumbered to correspond with the dates of the applicable month, no numbers were added, and there were no affidavits or testimony to otherwise establish what entries corresponded to what dates. Accordingly, the trial court correctly concluded that there was a genuine issue of material fact with regard to whether plaintiff's conduct on the videotape recordings indicated that plaintiff committed fraud, and the court properly denied defendant's motion for summary disposition.

Defendant relies on this Court's decision in *Bahri* to support its position. However, *Bahri* is distinguishable from this case because in *Bahri*, the plaintiff sought compensation for replacement services provided during the 19 days preceding the accident. *Bahri*, 308 Mich App at 425. In this case, plaintiff did not seek compensation for replacement services provided before his accident. Furthermore, the videotape in *Bahri* depicted the plaintiff performing activities that were inconsistent with her claimed limitations, including bending, lifting, carrying objects, driving, and running errands. *Id*. She was also observed running errands on one day for approximately eight hours. *Id*. While *Bahri* is similar to this case in that the plaintiff was observed running errands on a day for which she requested replacement services and was observed driving on a day for which she requested replacement services for assistance with driving, this case differs from *Bahri* because plaintiff was not observed doing anything inconsistent with his limitations or injuries. See *id*. at 425-426. Instead, plaintiff was observed running errands, driving, and lifting objects of unknown weigh during limited periods, which is consistent with his limitations and his testimony that he performed certain tasks when he was not

in pain or on pain medication. Therefore, *Bahri* is distinguishable from the instant case.[2] The trial court properly denied the motion for summary disposition.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Mark T. Boonstra

---

[2] The parties each raise several additional issues in their briefs on appeal, none of which are properly before this Court because the appeal is limited to the issues raised in the application for leave to appeal and supporting brief. See *Sampson v Jefferson*, unpublished order of the Court of Appeals, entered June 10, 2015 (Docket No. 326561). Accordingly, we do not address the issues. Furthermore, the majority of the issues are not preserved for appellate review because they were not raised in the trial court. See *The Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 308 Mich App 92, 103; 850 NW2d 649 (2014).