# STATE OF MICHIGAN

# COURT OF APPEALS

THE RESERVE AT HERITAGE VILLAGE
CONDOMINIUM ASSOCIATION,

Plaintiff,

v

WARREN FINANCIAL ACQUISITION, LLC,

Defendant-Appellant,

and

HERITAGE VILLAGE SINGLE FAMILY, INC.,
HERITAGE VILLAGE MASTER COMMUNITY
ASSOCIATION, GRAND/SAKWA
PROPERTIES, LLC, GRAND/SAKWA OF
WARREN, LLC, GARY SAKWA, NICK
DONOFRIO, WHITEHALL PROPERTY
MANAGEMENT, INC., CHRISTINE METIVA,
STANLEY L. SCOTT, DAVID A. GANS,
WINNICK HERITAGE VILLAGE, LLC, and
RESERVE MORTGAGE HOLDING, LLC,

Defendants,

and

THE MEISNER LAW GROUP, PC, ROBERT M.
MEISNER, and DANIEL P. FEINBERG,

Appellees.

UNPUBLISHED
December 18, 2018

No. 339765
Macomb Circuit Court
LC No. 2012-000133-CB

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

In this long-standing litigation involving allegations of unpaid condominium association assessments, defendant-appellant Warren Financial Acquisition, LLC (Warren Financial) appeals as of right the trial court's order denying its motion for sanctions against appellees, Robert M.

-1-

Meisner, Daniel P. Feinberg, and The Meisner Law Group, PC. Appellees served as counsel to plaintiff, The Reserve at Heritage Village Condominium Association, in the underlying litigation. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

We recited the facts of the underlying litigation at some length in a previous appeal to this Court and will not repeat them here. See *Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 96-103; 850 NW2d 649 (2014). In that appeal, this Court affirmed the trial court's determination that Counts IV through XXX of plaintiff's second amended complaint were properly dismissed as barred by the statute of limitations, reversed the portion of the trial court's decision concluding that Warren Financial could foreclose on the mortgage, and remanded for additional proceedings without retaining jurisdiction. *Id.* at 126.

On remand, Warren Financial and plaintiff filed multiple motions for summary disposition on Count I, which involved plaintiff's request to foreclose on a lien it had placed on Warren Financial's 76 condominium units, and Count II, which involved plaintiff's claim that it was owed $205,884 in unpaid assessments, exclusive of interest, late charges, costs, and attorney fees.[1] There were numerous discovery matters, multiple hearings, and constant disputes between the parties, including a dispute over what the holdings of this Court and the trial court meant. Warren Financial believed that plaintiff was continuously attempting to relitigate the dismissed counts, and plaintiff believed that Warren Financial was involved in a plot to defraud it of funds. Almost every order issued by the trial court was followed by a motion for reconsideration from one or both parties, which resulted in additional hearings where the trial court argued with counsel over what it meant by its opinion and order. Mediation and case evaluation were, unsurprisingly, unsuccessful.

Almost two years after this Court issued its opinion remanding this case, the parties finally proceeded to a bench trial on Counts I and II. Trial lasted five days over three months and consisted of testimony from the owner of the company currently managing the condominium complex, three members of plaintiff's board of directors, Nicholas Donofrio, and two attorney fees experts (one for each side). Six months after trial, the trial court issued its decision and held that Warren Financial was liable to "plaintiff for its pro rata share of expenses of administration, consistent with Article II, § 8 of the Bylaws," and had to pay $96,565.60. But the court also ruled that Article II, § 8's developer exemption was valid under the Condominium Act, MCL 559.101 *et seq.*, and that it exempted Warren Financial's liability for assessments. Because allegedly unpaid assessments formed the basis for plaintiff's lien on Warren Financial's condominium units, and because the trial court ruled that Warren Financial was not liable to plaintiff for any unpaid assessments, the trial court denied plaintiff's request to foreclose its lien, dissolved the lien, and denied plaintiff's request for attorney fees. The trial court also explained:

> While Warren Financial is . . . obligated to pay some money to plaintiff, *plaintiff has not actually succeeded on even a single count of its complaint.* To wit, 28 of

---

[1] By trial, this amount had increased to over $1 million.

the 30 counts brought against Warren Financial were dismissed prior to the commencement of this bench trial. Of the remaining two counts, plaintiff has not prevailed on its count of lien foreclosure (count I), nor has plaintiff prevailed on its count for unpaid assessments (count II). While this Court will enter judgment in favor of plaintiff for the unpaid pro rata share of administrative expenses—given the admission that such expenses are due and owing—*there is not a single count on plaintiff's complaint on which plaintiff was "successful."* Accordingly, plaintiff's request for attorney fees is properly denied.[2] [Emphasis added.]

Following this ruling, Warren Financial filed a motion seeking attorney fees and costs for filing a frivolous complaint under MCR 2.114[3] and MCL 600.2591. Warren Financial's motion

---

[2] Plaintiff appealed this decision. At some point after that, Warren Financial satisfied the judgment, and plaintiff's appeal was dismissed by stipulation. *Reserve at Heritage Village Ass'n v Warren Fin Acquisition LLC*, unpublished order of the Court of Appeals, entered August 1, 2017 (Docket No. 336932).

[3] MCR 2.114 was repealed effective September 1, 2018; its provisions now appear in MCR 1.109(E)(5) through (7). Administrative Order No. 2002-37, 501 Mich ___ (2018). Relevant to this appeal, MCR 2.114(D) through (F) provided:

> **(D) Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(E) Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.
>
> **(F) Sanctions for Frivolous Claims and Defenses.** In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

sought sanctions against plaintiff's counsel, appellees. The trial court scheduled an evidentiary hearing on the motion.

At the hearing, Warren Financial argued that it was the prevailing party under MCL 600.2591, but appellees' asserted that Warren Financial could not be the prevailing party because it had a judgment entered against it. Warren Financial countered that the trial court's opinion stated that plaintiff had not succeeded on a single count of its complaint and that the judgment was based on Warren Financial's admissions of its liability, not plaintiff's claims. Warren Financial then argued that various counts, positions, and defenses argued by appellees lacked a factual basis, were devoid of arguable legal merit, or showed an intent to embarrass, harass, or injure Warren Financial. Appellees countered that none of its positions lacked legal merit, that there was a factual basis for every count, and that it was Warren Financial that intended to embarrass, harass, or injure plaintiff.

In rendering its decision, the trial court addressed each of Warren Financial's claims individually, and rejected all of them. Having not found any of plaintiff's positions frivolous, the trial court refused to consider whether Warren Financial was the prevailing party. The court then denied Warren Financial's motion in its entirety.

Warren Financial sought reconsideration, which the trial court denied because it "remain[ed] unpersuaded that Plaintiff's positions were devoid of arguable legal merit." Warren Financial then filed this appeal against appellees.

## II. STANDARD OF REVIEW

In *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890 (2017), this Court explained:

> A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous. A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. [Quotation marks and citations omitted.]

## III. ANALYSIS

Warren Financial contends that the trial court clearly erred by determining that none of plaintiff's claims, defenses, or positions were frivolous. " 'Whether a claim is frivolous within the meaning of MCR 2.114(F) and MCL 600.2591 depends on the facts of the case.' " *Id.* at 731, quoting *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). Under MCL 600.2591(3)(a),

"Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

-4-

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

The provisions about frivolous claims and defenses in the Michigan Court Rules and MCL 600.2591 " 'impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed.' " *Meisner*, 321 Mich App at 731, quoting *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003).

> The reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith. The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted. [*Meisner*, 321 Mich App at 731-732 (citations omitted).]

A claim or defense is devoid of arguable legal merit when there clearly are no legal grounds to support it, *Taylor v Lenawee Co Bd of Rd Comm'rs*, 216 Mich App 435, 444-446; 549 NW2d 80 (1996), "such as when it violates basic, longstanding, and unmistakably evident precedent," *Bronson Health Care Group v Titan Ins Co*, 314 Mich App 577, 585; 887 NW2d 205 (2016).

## A. PREVAILING PARTY

Before Warren Financial can be entitled to sanctions for frivolous claims and defenses, we must determine whether it was "the prevailing party." MCL 600.2591(1). A "prevailing party" is "a party who wins on the entire record." MCL 600.2591(3)(b). In the underlying suit, the trial court was clear that (1) plaintiff "[had] not prevailed on its count of lien foreclosure (count I), nor [had] plaintiff prevailed on its count for unpaid assessments (count II)," (2) the judgment was entered in plaintiff's favor "given [Warren Financial's] admission that such expenses are due and owing," and (3) "there is not a single count on plaintiff's complaint on which plaintiff was 'successful.' " Not only did the trial court accept Warren Financial's calculation of its liability, but the amount awarded to plaintiff was less than the amount of the lien that plaintiff filed in 2011. Even though the amount Warren Financial owed plaintiff increased throughout the five-year litigation, it never reached the amount that plaintiff asserted it was entitled to before the litigation began. In this light, plaintiff never improved its position and its claims were "meritless," while Warren Financial improved its position by obtaining the removal of plaintiff's lien from its units. We conclude that the dissolution of the lien and the trial court's award to plaintiff of only the amount that Warren Financial conceded it was liable for rendered Warren Financial the prevailing party. See *Keinz v Keinz*, 290 Mich App 137, 141-142; 799 NW2d 576 (2010) (holding that the plaintiff was the prevailing party even though "[t]he circuit court did not resolve this question").

## B. COUNTS IV THROUGH XXVII

Warren Financial first argues that the trial court erred in denying its motion for sanctions for plaintiff's Counts IV through XXVII in its amended complaint because those counts "were undeniably time-barred and the relation-back doctrine did not apply." We disagree.

In the previous appeal, the issue was whether the claims plaintiff added in its amended complaints against Warren Financial and other defendants were barred by the statute of limitations. We explained that "[a]ny causes of action that accrued from January 11, 2010, to July 16, 2010, and are not contained in the original complaint, are . . . barred, unless the amended complaints relate back to the original complaint." *Reserve*, 305 Mich App at 120. In determining whether the claims in the amended complaints related back to the original complaint, we found a "close question" on "whether the amended complaints added wholly new and different parties." *Id.* at 121. We found no question, however, that "the claims in the amended complaints do not arise out of the conduct, transaction, or occurrence set forth in the original complaint." *Id.* But that did not end our inquiry because plaintiff could nevertheless have saved its claims "if the statute of limitations was tolled by fraudulent concealment." *Id.* at 120. Both this Court and the trial court rejected plaintiff's fraudulent-concealment argument. Both courts concluded that for Counts IV through XI—which concerned physical defects—there was no evidence that the defects were concealed. *Id.* at 123. As for "Counts XII through XXVII, involving the fraudulent scheme," this Court concluded that fraudulent concealment did not toll the statute of limitations because "plaintiff was aware of a possible cause of action by October 8, 2008, or March 3, 2009." *Id.* at 124.

Warren Financial asserts that "[b]ased upon a clear reading of the MCR 2.118(D) there was no arguable legal merit to justify the filing of Counts IV through XXVII." But the record shows that plaintiff was relying on alleged fraudulent concealment to toll the statute of limitations. Based on this argument, until the trial court determined—and we affirmed—that the date on which plaintiff had notice of a possible cause of action was March 3, 2009, plaintiff had an arguable claim that Counts IV through XXVII were not time-barred. We also note that the statute of limitations is a waivable affirmative defense; had Warren Financial not asserted the defense, the counts could have remained viable. See *Dell v Citizens Ins Co of America*, 312 Mich App 734, 757-758; 880 NW2d 280 (2015). And, contrary to Warren Financial's apparent assertions, filing a claim that may be barred by the statute of limitations does not, as a matter of law, render the claim or its filing frivolous. See *Siecinski v First State Bank of E Detroit*, 209 Mich App 459, 465-466; 531 NW2d 768 (1995) (holding that the plaintiff's error about application of the statute of limitations did not necessitate a finding that the action was frivolous).[4]

---

[4] Warren Financial raised other arguments at trial that it does not raise in its brief on appeal. We deem Warren Financial's decision to not include the arguments to be a waiver of those arguments. See *In re Subpoena Duces Tecum to Wayne Co Prosecutor*, 205 Mich App 700, 704; 518 NW2d 522 (1994) (explaining that a party waives appellate review of an issue raised at trial if that issue is not also raised in the party's brief on appeal).

## C. COUNT I—THE BLANKET LIEN

As part of plaintiff's attempt to foreclose on Warren Financial's condominium units (Count I), plaintiff imposed a blanket lien on all 76 of Warren Financial's units. Warren Financial contends that plaintiff's imposition of a blanket lien was a blatant violation of the relevant law, and that plaintiff's argument to the contrary was devoid of legal merit. We disagree.

When Warren Financial moved for summary disposition on Counts I and II in July 2015, it argued—as it does on appeal—that plaintiff's blanket lien violated MCL 559.208, which provides that "[t]he lien upon each condominium unit owned by the co-owner shall be in the amount assessed against the condominium unit." Warren Financial also relied on Article II, § 4 of the Bylaws, which states that "all assessments levied against the co-owners to cover expenses of administration shall be apportioned among and paid by the co-owners in accordance with the percentage value allocated to each unit."

In response, plaintiff asserted that Warren Financial ignored the beginning of MCL 559.208(1), which provides that the unpaid amounts "constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment," as well as the requirement in MCL 559.208(3)(a)(*i*) that the notice of lien include "[t]he legal description of the condominium unit or condominium units to which the lien attaches." Plaintiff reasoned that because the sums assessed constituted a lien against *units*—plural—owned by a *single* co-owner, and the lien required a legal description of the condominium *units*—again, plural—to which it attached, a blanket lien was "proper, if not absolutely mandatory."

In ruling on the parties' cross-motions for summary disposition, the trial court did not address Warren Financial's blanket-lien argument. Instead, it dissolved plaintiff's lien because it could only be imposed if Warren Financial owed assessments, and the trial court determined that Warren Financial was not liable to plaintiff for assessments. When ruling on Warren Financial's motion for sanctions, the trial court refused to address whether plaintiff's blanket-lien argument

---

In Warren Financial's reply brief, it argues that appellees' argument at trial that Article XXIII of plaintiff's Bylaws was unenforceable was a frivolous claim. Yet Warren Financial did not raise this argument in its initial brief; Warren Financial's initial brief referenced Article XXIII in its statement of facts, but its argument section is devoid of any mention of that article, and nowhere in Warren Financial's initial brief does it explain why appellees' Article-XXIII argument was frivolous. We decline to address Warren Financial's Article-XXIII argument because it is not properly before this Court having been first raised in Warren Financial's reply brief. See *Check Reporting Services, Inc v Michigan Nat Bank-Lansing*, 191 Mich App 614, 628; 478 NW2d 893 (1991) ("[W]e decline to address the new issues raised in plaintiff's reply brief because they are not properly before us."); *Blazer Foods, Inc v Rest Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("Reply briefs may contain only rebuttal argument, and raising an issue for the first time in a reply brief is not sufficient to present the issue for appeal."); MCR 7.212(G).

was frivolous in part because the trial court did not decide the issue in its earlier opinion and order.[5] Assuming that the trial court should have addressed whether plaintiff's blanket-lien argument was frivolous, we conclude that the argument was not and so affirm the trial court's ruling. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) (upholding a trial court's ruling where the court reached the right result for the wrong reason).

Both parties relied on MCL 559.208 for their arguments. MCL 559.208(1) provides:

> (1) Sums assessed to a co-owner by the association of co-owners that are unpaid together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the condominium documents, *constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment* before other liens except tax liens on the condominium unit in favor of any state or federal taxing authority and sums unpaid on a first mortgage of record, except that past due assessments that are evidenced by a notice of lien recorded as set forth in subsection (3) have priority over a first mortgage recorded subsequent to the recording of the notice of lien. *The lien upon each condominium unit owned by the co-owner shall be in the amount assessed against the condominium unit, plus a proportionate share of the total of all other unpaid assessments attributable to condominium units no longer owned by the co-owner but which became due while the co-owner had title to the condominium units.* The lien may be foreclosed by an action or by advertisement by the association of co-owners in the name of the condominium project on behalf of the other co-owners. [Emphasis added.]

Plaintiff has always argued that a "blanket lien" was proper under MCL 559.208(1) based on the statute's use of the alternative plural "unit or units" in the phrase "constitute a lien upon the unit or units in the project owned by the co-owner at the time of the assessment." Plaintiff's argument was essentially that the statute speaks of a singular lien that is applicable to multiple units. Although, as Warren Financial points out, the second sentence of MCL 559.208(1) likely bars blanket liens, we do not find that plaintiff's argument was devoid of legal merit. The argument was reasonable and grounded in basic principles of statutory interpretation. See *Taylor*, 216 Mich App at 444-446. And neither party was able to cite authority to support that their interpretation was settled law, or that the other party's position was contrary to settled precedent. See *Bronson Health Care Group*, 314 Mich App at 585. This was a purely legal question, and because Warren Financial has not established that plaintiff's argument was devoid

---

[5] The trial court also refused to find the argument frivolous because this Court refused to grant Warren Financial's motion to lift the stay on the proceedings in the first appeal, presumably inferring that if the claim was frivolous, then this Court would have lifted the stay. But this Court's order does not reflect any such intent. See *Reserve at Heritage Village Ass'n v Warren Fin Acquisition*, unpublished order of the Court of Appeals, entered November 20, 2013 (Docket No. 317830).

of legal merit, we are not left with a definite and firm conviction that the trial court erred by not finding the argument frivolous.

## D.  COUNT II—UNPAID ASSESSMENTS

### 1.  VALIDITY OF DEVELOPER EXEMPTION

At issue in this count was the proper interpretation of MCL 559.169(3), "at least as it relates to a developer's liability to pay condominium assessments," which the parties agreed was a matter of first impression in Michigan.  To resolve this count, the trial court had to consider the interplay of the Bylaws and the Condominium Act, and decide whether developer exemptions, like the one contained in the Bylaws, were permitted under the Condominium Act.  As part of its ruling, the court had to determine what the term "expenses of administration"—used in both the Bylaws and in the Condominium Act—meant.  The trial court first ruled that "expenses of administration" had different meanings in the Condominium Act and the Bylaws.  The trial court determined that, as used in the Condominium Act, "expenses of administration" included assessments, but that the term was used much more narrowly in the Bylaws.  The trial court then referred to the rest of MCL 559.169(3), which permitted "expenses of administration"—and therefore assessments—to be apportioned as "contained in the master deed."  The trial court concluded that, because the Condominium Act allowed liability for assessments to be determined by the Master Deed, the provision in the Bylaws exempting developers like Warren Financial from paying assessments was permissible under the Condominium Act.

Warren Financial asserts that plaintiff pleaded several defenses and positions related to Count II that were frivolous.  We will address each of these in turn.

### 2.  DEFENSES OF ESTOPPEL, WAIVER, AND COURSE OF CONDUCT

At trial, plaintiff argued that even if the Bylaws exempted Warren Financial from paying assessments, Warren Financial was estoped or waived its right to not pay the assessments based on its course of conduct.  Warren Financial argues that plaintiff's estoppel, waiver, and course of conduct assertions were without legal merit because the Bylaws expressly provided that, even if Warren Financial had paid the assessments in the past, it would not constitute a waiver of its right to enforce the developer exemption in the future.  The trial court held that the estoppel argument was not frivolous because its resolution depended on a factual dispute that was decided at trial.

During trial, the parties presented conflicting evidence about Warren Financial's reasons for why it paid—and then stopped paying—assessments.  The trial court resolved the conflict in evidence in Warren Financial's favor, finding that Warren Financial's witness, Donofrio, "provide[d] a fully adequate rationale for Warren Financial's decision to stop paying assessments."  Based on this "adequate rationale," the trial court concluded that Warren Financial was not estoped from refusing to pay assessments.

In a footnote, the trial court referenced Article XIX, § 5 of the Bylaws, which provides, "[t]he failure . . . of any Co-owner to enforce any right, provision, covenant, or condition which may be granted by the Condominium Documents shall not constitute a waiver of the right . . . to

enforce such right, provision, covenant or condition in the future." In determining whether plaintiff's estoppel or waiver arguments were frivolous, the trial court erred by focusing on its resolution of a factual dispute rather than on the application of Article XIX, § 5. Regardless of Warren Financial's reasons for paying or not paying assessments, if Warren Financial was entitled to the developer exemption and therefore not liable to plaintiff for assessments, then, based on Article XIX, § 5, its previous act of paying the assessments simply could not constitute a waiver. On appeal, appellees do not explain why its estoppel or waiver arguments were permissible in light of the plain language of Article XIX, § 5. Because Article XIX, § 5 clearly precluded plaintiff's estoppel or waiver arguments, we are definitely and firmly convinced that the trial court erred by not finding those arguments frivolous.

### 3. DEFENSE THAT WARREN FINANCIAL WAS NOT A DEVELOPER

Warren Financial also argues that the Condominium Act and Bylaws are clear that Warren Financial was a developer, and that plaintiff's initial argument that Warren Financial was not a developer was frivolous. We disagree.

Warren Financial contends that appellees "need only have looked at the [Condominium Act] and the Master Deed to see that" Warren Financial was "a 'successor developer' and, consequently, [was] a 'Developer' under" the Master Deed. Warren Financial supports this argument by referencing the statutory definitions of "developer" and "successor developer" in MCL 559.106(2) and MCL 559.235(1) respectively. But Warren Financial does not address appellees' argument why these statutory definitions do not control the Master Deed. Appellees have always contended that, although Warren Financial met the statutory definition of "successor developer," this did not de facto make Warren Financial a "developer" as used in the Master Deed. Notably, the trial court accepted a similar argument for the term "expenses of administration"; it ruled that "expenses of administration" as used in the Condominium Act was not the same as when that term was used in the Bylaws.

The parties' dispute about whether Warren Financial was a developer centered around Article III, § 11 of the Master Deed, which defines "Developer" as meaning "Heritage Village Single Family, Inc. [HVSFI], a Michigan corporation, which has made and executed this Master Deed, and its successors and assigns." Appellees took the position that if the drafters of the Master Deed wanted to incorporate the statutory definition of "successor developer" into this section, they could have done so but did not. Appellees contended that this was evidence that the drafters of the Master Deed intended for the definition of "developer" in the Master Deed to be distinct from the statutory definition of a "successor developer." Appellees asserted that, based on this evidence, the section should be read as only applying to corporate successors of HVSFI, meaning those who succeeded HVSFI by merger or acquisition. While appellees' position was ultimately rejected, it was nonetheless based on basic principles of contract interpretation. Warren Financial has not explained why the trial court clearly erred by concluding that there were no legal grounds that supported appellees' position, see *Taylor*, 216 Mich App at 444-446, or how appellees' position violated longstanding and unmistakably evident precedent, see *Bronson Health Care Group*, 314 Mich App at 585. As a result, we are not definitely and firmly convinced that the trial court erred by concluding that appellees' argument that Warren Financial was not a "developer" as that term is used in the Master Deed was not frivolous.

-10-

## 4. DEFENSE THAT ARTICLE II, § 8 VIOLATED CONDOMINIUM ACT

Warren Financial also takes issue with plaintiff's assertion that Article II, § 8 was void as violative of the Condominium Act, which plaintiff first asserted after this Court held in the previous appeal that Warren Financial was a developer. As the trial court noted, parties' positions during litigation are fluid and, so long as they are not inconsistent, there is nothing inherently frivolous with pleading new or alternative arguments to support a client's position. Warren Financial claims that the law was clear and did not exclude or void a developer exemption provision, but this ignores that the validity of the developer exemption under the Condominium Act was an issue of first impression and that appellees asserted legally sound, albeit ultimately unsuccessful, arguments in support of their position that the exemption was invalid. The trial court did not clearly err in determining that plaintiff's position was not frivolous.

## 5. BUDGETS AND FINANCIAL STATEMENTS

Warren Financial next argues that the trial court erred in denying its motion for sanctions because (1) plaintiff's proffered budgets and financial statements were not true and accurate; (2) plaintiff allegedly misrepresented that generally accepted accounting principles (GAAP) did not apply to condominium financials; (3) plaintiff's position that assessments and the developer's responsibility for administration expenses under Article II, § 8 were identical was frivolous; and (4) plaintiff's position that, regardless of a budget's contents, its formulation was solely within the discretion of the board of directors was contrary to the plain language of the Bylaws and therefore was frivolous.

### a. BUDGET ACCURACY

Although Warren Financial complains about the accuracy of plaintiff's budgets, the average of those budgets was what both Warren Financial and the trial court used to calculate Warren Financial's liability for its pro rata share of the expenses of administration. And because both Warren Financial and the trial court determined the budgets to be accurate enough to use their arithmetic mean to determine Warren Financial's liability, we conclude that the trial court did not clearly err in denying Warren Financial sanctions on this issue.

### b. GAAP

Similarly, the trial court did not clearly err by not finding plaintiff's assertion that GAAP did not apply to condominium financials was frivolous. The statute governing this issue is MCL 559.157(2), which states:

> Except as provided in subsection (3), an association of co-owners with annual revenues greater than $20,000.00 shall on an annual basis have its books, records, and financial statements independently audited or reviewed by a certified public accountant, as defined in section 720 of the occupational code, 1980 PA 299, MCL 339.720. *The audit or review shall be performed in accordance with the statements on auditing standards or the statements on standards for accounting and review services, respectively, of the American institute of certified public accountants.* [Emphasis added.]

-11-

Without explanation, Warren Financial asserts that the italicized portion of the statute refers to GAAP. This is a strictly legal issue of statutory interpretation, and Warren Financial provides no support for its assertion that the statute necessarily refers to GAAP. By its plain terms, the statute refers to standards set by "the American institute of certified public accountants," not GAAP. Warren Financial's argument is cursory and wholly underdeveloped, and it presents no basis for us to conclude that plaintiff's claim that GAAP did not apply to condominium financials was frivolous. See *Blazer Foods, Inc v Rest Properties, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("[P]laintiffs have waived the issue by giving it such cursory treatment.").

### c. ASSESSMENTS AND DEVELOPER'S RESPONSIBILITY ARE IDENTICAL

Warren Financial objects to plaintiff's contention that the assessments it sought to impose were identical to the expenses of administration that the Bylaws permitted. But this does not accurately reflect plaintiff's position; plaintiff contended that the definition of "expenses of administration" was the same in both the Bylaws and the Condominium Act, and that the term included assessments. The trial court agreed with plaintiff that, as used in the Condominium Act, "expenses of administration" included assessments, but rejected plaintiff's argument that the term was used the same way in the Bylaws. So, although the trial court ultimately rejected plaintiff's position, plaintiff's argument was not wholly without justification and, as noted earlier, was an issue of first impression. Warren Financial argues that the Bylaws' developer exemption expressly differentiated between developers' obligations for assessments and expenses of administration, but the question before the trial court was whether the developer exemption was valid in light of the Condominium Act. The trial court did not clearly err in denying sanctions to Warren Financial for appellees' position on this issue.

### d. UNFETTERED BOARD DISCRETION TO CREATE BUDGET

Next, Warren Financial argues that plaintiff's position that its board had unfettered discretion to determine what was contained in the budget was frivolous. We disagree.

The board members testified that they believed they held complete authority to determine the budget. Warren Financial's financial expert testified to the contrary. The trial court did not resolve this conflict. Although there is no question that the litigation expenses related to Counts IV through XXX should have been assessed through a special litigation assessment and not in the annual assessments, those attorney fees were removed from the attorney fees calculation at trial. And, until the final verdict was issued, plaintiff's board was working under the reasonable position that the litigation fees being incurred were for an assessment-collection action. Although there was testimony that the legal fees ought to have been separated out into their own line item in the budget, there was no testimony that they were not properly assessed to the remaining co-owners in the budget. Just because Warren Financial could not be charged for the attorney fees—as will be discussed—did not render their inclusion in the budget inappropriate.

### E. PLAINTIFF'S CLAIM FOR ATTORNEY FEES

Warren Financial argues that plaintiff's entire claim for attorney fees related to Counts I and II was frivolous based on a clear provision in the Bylaws that plaintiff never argued was invalid. We disagree.

Warren Financial's argument centers on Article II, § 8 of the Bylaws, which provides in relevant part:

Further, the Developer shall in no event be liable for any assessment levied in whole or in part to purchase any Unit from the Developer or to finance any litigation or other claims against the Developer, any cost of investigating and preparing such litigation or claim or any similar or related costs.

Warren Financial argues that, based on this section, the Bylaws "expressly [exclude] the recovery of attorney's fees from the developer for the purpose of litigation," "[n]o reasonable reading of . . . the Bylaws supported a finding that a developer would be liable to pay attorney's fees related to litigation asserted against it arising under the Bylaws," and any "arguments to the contrary were frivolous."

But this argument ignores that the Bylaws provide other ways to collect attorney fees. Namely, Article II, § 6(d) provides that "[t]he expenses incurred in collecting unpaid assessments, including . . . actual attorneys' fees" are "chargeable to the Co-owner." While Article II, § 8 prohibits a developer from liability for "any assessment levied . . . to finance any litigation . . . against the Developer," attorney fees awarded under Article II, § 6(d) are not assessed but are directly charged to the co-owner—which includes a developer—in default. In other words, Article II, § 8 prohibits collecting attorney fees or other costs related to litigation against a developer from the developer through assessments, but Article II, § 6(d) permits charging a developer attorney fees related to collecting unpaid assessments against the developer in default. For reasons already explained, plaintiff had a reasonable legal basis to argue that Warren Financial, as a developer, owed assessments to plaintiff. Until the trial court ruled that Warren Financial was not, in fact, liable for assessments based on Article II, § 8—which the trial court upheld as valid under the Condominium Act—plaintiff reasonably sought attorney fees under Article II, § 6(d) as part of an attempt, albeit an unsuccessful attempt, to collect unpaid assessments. Because appellees' position that plaintiff was entitled to attorney fees was not devoid of legal merit, the trial court did not clearly err by ruling that the position was not frivolous.

## F. PURPOSE OF LITIGATION WAS TO EMBARRASS, HARASS, OR INJURE

Finally, Warren Financial argues that the trial court clearly erred when it determined that plaintiff did not initiate the litigation to embarrass, harass, or injure Warren Financial and its agents. We disagree.

In support of its contention, Warren Financial first relies on testimony of plaintiff's attorney-fees expert, who agreed with the proposition that some of the counts that plaintiff added in the amended complaints "were asserted by the Plaintiff just to put pressure on the Defendant to try to get them to pay the assessment." The expert also testified:

I said it, and I'll say it again. [The second amended complaint] relates to a strategy that was in response to the defense strategy to put it all and any kind of counts that they feel might have an effect on the Defendant to resolve the case in the manner in which they wanted it to.

-13-

The expert described Meisner as "overzealous" and "aggressive" in a case he had litigated against Meisner, but maintained that Meisner's actions in that case were not inappropriate. The expert believed that, in this case, both sides were "aggressive" and "strong advocate[s]."

Warren Financial's argument that plaintiff's amended complaints, which added a number of claims, establishes that appellees' intent was to embarrass, harass, or injure Warren Financial ignores that initiating litigation is almost always a strategic decision and an attempt to force the other party into resolution of the matter. We will not conclude that asserting one's legal rights through litigation is, by itself, evidence of an intent to embarrass, harass, or injure. Similarly, although advancing numerous claims may be evidence of an intent to embarrass, harass, or injure, it does not per se establish that that was the party's intent.

Relatedly, Warren Financial argues that Counts IV through XXVII are evidence of appellees' intent to embarrass, harass, or injure Warren Financial because the counts "were premised upon allegations of a fraudulent scheme . . . and stealing and embezzlement on the part of Warren Financial, its agents[,] and its representatives," and, despite Counts IV through XXVII being dismissed as barred by the statute of limitations, appellees referred to these allegations as late as their July 2016 post-trial brief. But Warren Financial does not explain why this is evidence of an intent to embarrass, harass, or injure. While it is possible that appellees were seeing fraud where none existed, Counts IV through XXVII were dismissed on procedural grounds and so were never developed. Appellees' continued assertions about the dismissed fraud allegations suggests that they believed in the validity of those allegations and that Warren Financial and its agents only got away with the fraud based on the running of the statute of limitations. In short, we cannot conclude that the mere existence of the fraud allegations and appellees' references to those allegations is evidence of an intent to embarrass, harass, or harm.

Warren Financial argues that appellees' intent to injure Warren Financial was also evidenced by plaintiff's keeping the lien on Warren Financial's lots and refusing to lift the stay because appellees knew that the units could not be sold with the lien. Unlike Warren Financial, we do not construe plaintiff's and appellees' refusal to lift the lien as evidence of an intent to injure. The record suggests that plaintiff and appellees truly believed that plaintiff was entitled to its lien, and that the lien was imperative to protecting plaintiff's ability to obtain the unpaid assessments that plaintiff argued were due. And Warren Financial is not without fault for the amount of time that the lien remained pending; Warren Financial chose to focus not on getting the lien vacated in court but on creating an end-run around the lien through two separate foreclosure proceedings.

Warren Financial also takes issue with appellees' actions during discovery, and contends that those actions are evidence of appellees' intent to embarrass, harass, or injure. But appellees' actions in discovery are not concerning. Warren Financial claims appellees acknowledged Warren Financial's right to seek depositions, but then filed a motion for a protective order to block the depositions on grounds that the depositions were being sought for purposes of annoyance, oppression, or to cause undue burden or expense. We fail to see how this is evidence of an intent to embarrass, harass, or injure; permitting a party to seek a deposition is not equivalent to agreeing to the deposition. Indeed, if the parties cannot agree on whether a deposition is proper, the entire point of telling the other party to seek the deposition may be to contest the deposition and have a court resolve the parties' disagreement.

In short, this was a complex litigation with two very zealous law firms representing two parties completely entrenched in their positions and unwilling to budge. This happens in litigation, and it is not evidence of an intent to embarrass, harass, or injure. None of the evidence that Warren Financial points to on appeal leaves us with a definite and firm conviction that the trial court made a mistake when it ruled that appellees' purpose for initiating the litigation was not to embarrass, harass, or injure.

## III. CONCLUSION

In light of the foregoing, we hold that Warren Financial was the prevailing party, and the trial court clearly erred by concluding that none of plaintiff's claims or defenses were frivolous. We remand for a determination by the trial court of the appropriate sanction for appellees' frivolous claim as identified in this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. No taxable costs under MCR 7.219, neither party having prevailed in full. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien