*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

JAN AKERVALL, CHARLOTTE AKERVALL,
MICHAEL HAMME, MARLENE HAMME,
BRIAN MEADE, ELIZABETH HARKINS
MEADE, DAVID PAUKEN, and JUNKO
PAUKEN,

        Plaintiffs-Appellees,

v

MARILYN S. GOODING, Individually and as
Trustee for the MARILYN S. GOODING TRUST,
and DOUG GEIDNER,

        Defendants-Appellants.

UNPUBLISHED
February 18, 2021

No. 349866
Washtenaw Circuit Court
LC No. 17-000823-CH

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and REDFORD, JJ.

PER CURIAM.

Defendants appeal by leave granted[1] the trial court's order granting partial summary disposition to plaintiffs under MCR 2.116(C)(10) and declaring that they had exclusive right to use a private road easement known as Stone Valley Court.[2]  We affirm.

---

[1] *Akervall v Gooding*, unpublished order of the Court of Appeals, entered November 26, 2019 (Docket No. 349866).

[2] The trial court denied plaintiffs summary disposition of their claim seeking injunctive relief regarding the pond contiguous to Lots 3 through 7 and claim for damages for trespass/intentional interference with the private road easement.  The trial court later entered a stipulated order dismissing those claims without prejudice.

## I. BACKGROUND FACTS

Defendant Marilyn S. Gooding[3] developed the Stone Valley Development, a residential development, and conveyed to plaintiffs by warranty deeds Lots 1, 2, 3, 5 and 6. Plaintiffs' recorded warranty deeds specify that the land conveyed to them remained subject to easements and restrictions of record, and the legal descriptions within their recorded deeds specifically describe a nonexclusive easement for ingress and egress and public utilities. The Stone Valley Development is subject to a Declaration of Easements and Restrictive Covenants (DERC) recorded on September 1, 1999, which, among other things, provided lot owners easements for ingress and egress to their lots via a private road known as Stone Valley Court. The DERC set forth the legal descriptions of Lots 1 through 7 and specified the legal description defining the easement for ingress and egress and utilities associated with those lots. The DERC specified the legal description of the pond as "Remainder Parcel 'A' " designated as submerged land. The DERC also set forth the legal description of "Remainder Parcel 'B' " and specified that that parcel be subject to the reservation of a perpetual nonexclusive easement for ingress and egress and the installation and maintenance of utilities running north from the parcel to Cherry Hill Road and also subject to an easement granted to Detroit Edison Company. Notably, the DERC did not specify that "Remainder Parcel 'B' " be subject to the easement appurtenant to Lots 1 through 7.

A recorded survey of the Stone Valley Development dated August 25, 1999, defines the private road easement for ingress and egress and public utilities (now known as Stone Valley Court) as starting at Gale Road, a public road, running adjacent to lots 1 through 7, and ending at the far boundary line of Lot 7 which abuts a parcel designated as "Remainder 'B' " which has its own specified easement for ingress and egress and utilities that runs north from the parcel to Cherry Hill Road. The pond on which Lots 3 through 7 abut is designated as "Remainder 'A' ". The survey sets forth the legal description for each of Lots 1 through 7 and describes the legal description of the easement for ingress and egress and utilities specifically associated with each of those lots.

At some point, defendants began developing "Remainder Parcel 'B' " and used Stone Valley Court to access the parcel for construction purposes and indicated an intention to extend the private road for use as a means of ingress and egress to the new lots which prompted plaintiffs to bring this action to determine their rights to, among other things, Stone Valley Court. The trial court granted plaintiffs summary disposition and defendants now appeal.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008), reh den 481 Mich 882 (2008). A motion brought pursuant to MCR 2.116(C)(10) tests the factual support of a plaintiff's claim and is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact

---

[3] Gooding is an incapacitated elderly woman. Defendant Doug Greidner is Gooding's son-in-law.

exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008) (citation omitted). Summary disposition is appropriate, however, "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Rose v Nat'l Auction Group, Inc,* 466 Mich 453, 461; 646 NW2d 455 (2002). This Court reviews for an abuse of discretion the trial court's decision to grant declaratory relief. *The Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 104; 850 NW2d 649 (2014). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

## III. ANALYSIS

Defendants argue that the trial court erred in determining that the private road easement specified that it ended at Lot 7, and that the easement could not be expanded. We disagree.

In *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005) (citation omitted), a case in which the trial court granted summary disposition regarding the scope of an easement, our Supreme Court indicated that "[t]he extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003).

"An easement is the right to use the land of another for a specified purpose." *Heydon v MediaOne*, 275 Mich App 267, 270; 739 NW2d 373 (2007). "An owner of an easement cannot displace the possessor or the owner of the land, but . . . has a qualified right to possession" to the extent necessary for enjoyment of the easement. *Terlecki v Stewart*, 278 Mich App 644, 660; 754 NW2d 899 (2008). "An easement may be created by express grant, by reservation or exception, or by covenant or agreement." *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 661; 651 NW2d 458 (2002) (citation omitted).

In this case, Gooding developed seven lots and created an easement for a private roadway to access the lots by owners. The recorded survey for the development specified the private road easement for Lots 1 through 7. The recorded DERC similarly specified the private road easement for Lots 1 through 7. The recorded warranty deeds conveying to plaintiffs their properties also set forth specifically that the private road easement applied to their respective lots. The rights of an easement holder are defined by the easement agreement. *Schadewald v Brule*, 225 Mich App 26, 38; 570 NW2d 788 (1997). The scope of an easement is determined by "the language or express reservations of the grant." *Blackhawk Dev Corp*, 473 Mich at 42. The "objective in interpreting a deed is to give effect to the parties' intent as manifested in the language of the instrument." *Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). When ascertaining the parties' intent in granting an easement, the analysis "is strictly confined to the 'four corners of the instrument' granting the easement." *Blackhawk Dev Corp*, 473 Mich at 42. When interpreting the document, a court will read the contractual language as a whole, and interpret individual words in the context that they are used. *Henderson v State Farm Fire and Cas Co*, 460 Mich 348, 356–357; 596 NW2d 190 (1999). The language of the recorded

warranty deeds, the DERC, and the development's survey, therefore, are dispositive in this case. There is no ambiguity that the private road easement attached to Lots 1 through 7 alone.

Defendants argue that the easement allows for the roadway to be extended and used for more properties that would be developed. We disagree.

The record reflects that the developer, Gooding, recorded the DERC on September 1, 1999, and incorporated the survey of the land that unequivocally set forth the limits of the easement of ingress and egress and utilities that attached to Lots 1 through 7 alone. The legal description of "Remainder Parcel 'B' " specified a separate easement for the parcel's ingress and egress.



The private road easement from Gale Road to the seven lots terminated at the boundary of Lot 7. The easement of access to "Remainder Parcel 'B' " extends from the parcel to Cherry Hill Road. The survey includes metes and bounds descriptions of the individual Lots 1 through 7; each is

"subject to and together with an easement for ingress and egress, and public utilities" the description of which is specified for each lot.

The survey contained a description of each lot that included a statement that the lots were "[s]ubject to and together with an easement for ingress and egress and public utilities, described as" ending at "the easterly right-of-way line of said Gale Road." Notably, the easement described for "Remainder Parcel 'B' " differs significantly from those described for the individual lots by stating that that parcel is "subject to the reservation of a perpetual, non-exclusive 66-foot wide easement for the purposes of ingress and egress and the installation and maintenance of utilities" that extended from Cherry Hill Road to the north to the point of origin.

The deeds for Lots 1 through 7 on record contain identical language to the lot descriptions in the recorded survey. The deeds state that the lots are "[s]ubject to and together with an easement for ingress and egress and public utilities" that extends to "the easterly right of way line of said Gale Road." The deeds do not specify that the private road easement from Gale Road extends to and serves "Remainder Parcel 'B' " or any other property retained by the developer. The survey reveals the developer's intent that Cherry Hill Road serve as the access point for a road to access "Remainder Parcel 'B' ", not Stone Valley Court. Further, the DERC provides:

> Developer shall bear the entire cost of creating the private road improvements of Stone Valley Court, over the sixty-six (66) foot wide right-of-way as set forth in Exhibit "A", in the plans and specifications prepared by Midwestern Consulting, Inc. In addition, the Developer, agrees to bear the cost of any maintenance and repair required to the private roads sixty-six (66) foot wide right-of-way until 1 October 2001, after which time all further maintenance and repair shall be shared equally by all lot owners as set forth below.

The DERC describes the purpose of the Stone Valley Court easement, as follows:

> Developer hereby declares that the lots described in Exhibit "A" shall be sold, held and conveyed subject to the following easements, restrictions, convenants and conditions, which are to protect the value and desirability of all the lots, and be binding on all parties having any right, title or interest in the described lots, their heirs, successors and assigns.

> Developer also desires to provide for the establishment and maintenance of a private roadway easement to serve each lot and their owners, and to have a Development that is suitable for family living and at the same time maintain the natural beauty and character of the property.

> The following restrictions are hereby imposed on all lots in the Development. Any sale, subdivision, or resale of any of the lots described herein shall be made subject to the terms and conditions of this agreement.

The DERC specified that the private road easement benefits Lots 1 through 7, as depicted in the survey, and there is no indication that it was contemplated that the Stone Valley Court easement would be extended beyond its designated terminus to serve "Remainder Parcel 'B' " or any future lot.

The DERC further defined the nature of the easement in relation to the existing lots, without reference to the remainder parcels or future lots:

> Easements, Utilities and Drainage. The lots are subject to a perpetual and permanent easements [sic] for the roadway, utilities and drainage. Lot owners shall maintain the surface area of any easement located on their lot, keeping the area free of trash and debris, and shall take such action as necessary to eliminate surface erosion. No utilities other than underground utilities shall be installed on any lot. Such perpetual easement shall burden the land it passes across, over and through, and benefit with all the lots.

"When a person purchases property that is recorded in a plat, the purchaser receives both the interest described in the deed and the rights indicated in the plat." *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016). Once granted, neither party may modify an easement unilaterally. *Schadewald*, 225 Mich App at 36. "An easement holder may not materially increase the burden on the servient estate beyond what was originally contemplated." *Great Lakes Gas Transmission Co v MacDonald*, 193 Mich App 571, 577; 485 NW2d 129 (1992).

In this case, the recorded DERC, survey, and warranty deeds plainly established that the Stone Valley Court easement serves and benefits Lots 1 through 7 alone. Any use of the easement beyond that which is specified in these documents does not comport with the express intent of the developer and the rights, privileges, and obligations contractually binding the parties. The trial court properly analyzed the controlling documents and correctly determined that the private road easement, Stone Valley Court, serves only Lots 1 through 7. The trial court correctly held that no genuine issue of material fact exists in this regard.

Defendants argue that the trial court errantly concluded that there was no intent for the developer to develop the remainder B portion of the property. However, the trial court correctly addressed the critical issue, which was not whether defendants would develop further lots, but whether the evidence demonstrated that an easement was reserved on Stone Valley Court to benefit future development of "Remainder Parcel 'B' ". Defendants argue that they can rely upon an unrecorded survey drawing that depicted a road going all the way around the pond ("Remainder Parcel 'A' "), and included an additional Lot 8. Such drawings, however, were prepared around 1995 and 1998, were not recorded, contain no legal description of Stone Valley Court's extension past Lot 7, and obviously were preliminarily prepared before the developer finalized the scope of the development, developed the land, and recorded the DERC and survey. Accordingly, defendants' argument in this regard lacks merit.

Defendant also argues that a recorded utility easement depicts a roadway going past Lot 7, extending past a Lot 8 and around the lake. That document, however, appears to have been recorded in April 1999, before finalization of the development plan, the recording of the DERC (September 1999), the survey (March 2000), and subsequent deeds, all of which are in harmony with one another. No document of record establishes that the recorded DERC, recorded survey, or plaintiffs' recorded warranty deeds were ever amended by agreement of the parties to extend the private road easement beyond Lot 7. When the language of an easement is plain and unambiguous, the trial court may not consider extrinsic evidence of "the circumstances existing at

the time the easement was granted in determining the intent of the grantor of the easement." *Dyball v Lennox*, 260 Mich App 698, 705; 680 NW2d 522 (2004).

Defendants attempt to rely upon the DERC's provision that states that the "[d]eveloper may at its option change the size, shape and numbers of lots as future [d]evelopment needs arise." However, once the deeds to Lots 1 through 7 were recorded, defendants no longer retained an interest in those lots and could not alter the property rights associated with them. Defendants may create new lots out of undeveloped land, but they may not alter the easement agreements memorialized in the recorded DERC, plaintiffs' recorded warranty deeds, and the recorded survey. The trial court correctly determined that the DERC, the survey, and plaintiffs' warranty deeds established the scope of the private road easement and that it did not benefit "Remainder Parcel 'B' " or any future lots.

Affirmed.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ James Robert Redford