*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEPHEN S. STONE,

      Plaintiff/Counterdefendant-Appellant,

v

VICTOR MROZEK,

      Defendant/Counterplaintiff/Cross-
Plaintiff-Appellee,

and

QUALITY SERVICES CEILINGS & WALLS,
INC.,

      Defendant-Appellee,

and

V & S QUALITY DRYWALL, INC.,

      Cross-Defendant.

UNPUBLISHED
December 1, 2022

No. 358253
Oakland Circuit Court
LC No. 2020-184019-CB

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order dismissing plaintiff's claims against defendants Victor Mrozek and Quality Services Ceilings & Walls, Inc. ("Quality"). On appeal, plaintiff challenges the trial court's orders (1) granting defendants' motions for summary disposition and dismissing all of plaintiff's claims pursuant to either MCR 2.116(C)(5) (lack of capacity to sue), (C)(7) (statute of limitations), (C)(8) (failure to state a claim for relief), or (C)(10) (no genuine issue of material fact); (2) denying plaintiff's motion to file a third amended complaint; and (3) imposing sanctions against plaintiff for not complying with the court's

-1-

discovery orders. We vacate the trial court's sanction of $1,000 against plaintiff in its June 1, 2021 order and affirm in all other respects.

## I. FACTS AND PROCEEDINGS

In the 1990s, plaintiff and defendant Mrozek operated separate drywalling businesses. In 1998, they jointly formed V & S Quality Drywall, Inc. ("V & S"). According to plaintiff, Mrozek was not as successful as plaintiff before they formed V & S. Plaintiff alleges that he and Mrozek agreed that Mrozek would assume most of the responsibility for managing V & S's day-to-day affairs and keep plaintiff informed of V & S's performance. Plaintiff also ran a separate drywalling company, Marine City Ceiling & Partition, Inc., but denied that it competed for business with V & S. According to plaintiff, after 2000, Mrozek became less forthcoming with information about V & S's progress, and in 2001, Mrozek formed defendant Quality as a new drywalling business. Plaintiff alleges that Mrozek concealed Quality's existence from plaintiff, and acted against V & S's interests by diverting drywalling business to Quality. Plaintiff asserts that he did not discover Quality's competition until 2020, when he began to plan his retirement. When plaintiff discussed V & S's future with Mrozek, Mrozek revealed that he wanted to take over V & S for himself. Plaintiff alleges that Mrozek denied plaintiff's requests to see V & S's records and relocated V & S's office without informing Mrozek of the new location. Plaintiff asserted that he learned about Quality when he discussed his difficulties with drywalling suppliers.

Plaintiff filed this action against Mrozek and Quality on October 13, 2020. Plaintiff's second amended complaint ("SAC") stated ten counts: (1) shareholder oppression, (2) breach of fiduciary duty, (3) breach of contract, (4) unjust enrichment, (5) accounting, (6) tortious interference with a business expectancy, (7) innocent misrepresentation, (8) fraudulent misrepresentation, (9) common-law conversion, and (10) statutory conversion. During discovery, plaintiff responded to defendant's request for production of documents by advising defendants that they were already in possession of the requested documents. After the trial court granted defendants' motion to compel discovery, defendants moved for dismissal as a discovery sanction on the ground that plaintiff's responses did not comply with the court's orders. The trial court denied defendants' request for dismissal, but imposed a sanction of $1,000.

Defendants thereafter moved for summary disposition under MCR 2.116(C)(5), (7), (8), and (10). Defendants argued that plaintiff was not the real party in interest for his claims of breach of fiduciary duty, breach of contract, unjust enrichment, tortious interference, misrepresentation, and conversion—the real party in interest for these claims was V & S. Defendants also argued that all of plaintiff's claims were barred by the applicable statute of limitations because they accrued in 2001 and that plaintiff's pleadings were insufficient to state legally sufficient claims for breach of contract, accounting, unjust enrichment, tortious interference, misrepresentation, and conversion. Finally, defendants argued that plaintiff could not establish a genuine issue of material fact regarding Mrozek's personal liability because Article VII of V & S's Articles of Incorporation limited a director's personal liability. The trial court granted defendants' motion on all of these grounds.

Plaintiff then moved to file a third amended complaint ("TAC") that omitted the claims for innocent and fraudulent misrepresentation, added a claim for silent fraud, and purportedly corrected pleading deficiencies in the SAC. The trial court denied plaintiff's motion for leave to

file a TAC. The court thereafter issued a final order dismissing all of plaintiff's claims with prejudice. This appeal followed.

## II. STATUTE OF LIMITATIONS

Plaintiff first argues that the trial court erred by dismissing all of his claims on the ground that they were barred by the applicable statutes of limitation. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by the statute of limitations. A party moving for summary disposition under MCR 2.116(C)(7) may support its motion with documentary evidence, and "[t]he reviewing court must view the pleadings and supporting evidence in the light most favorable to the nonmoving party" to determine whether the claim is barred by the statute of limitations. *Kincaid v Cardwell*, 300 Mich App 513, 522-523; 834 NW2d 122 (2013). "In the absence of disputed facts, whether a cause of action is barred by the applicable statute of limitations is a question of law, which this Court reviews de novo." *Magee v DaimlerChrysler Corp*, 472 Mich 108, 111; 693 NW2d 166 (2005).

In Count I, plaintiff asserted a claim for shareholder oppression, which exists when "the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." MCL 450.1489(1). The action "must be commenced within 3 years after the cause of action under this section has accrued, or within 2 years after the shareholder discovers or reasonably should have discovered the cause of action under this section, whichever occurs first." In his SAC, plaintiff alleged that "[f]rom approximately 2001 to the present," Mrozek controlled V & S's revenues and expenditures and prevented plaintiff from learning about V & S's expenses, revenues, customers, and property. Plaintiff alleged that Mrozek denied him access to records, refused to distribute earnings to him, and prevented him "from meaningfully participating in the operation and governance of V & S." Plaintiff also alleged that Mrozek's actions reduced the value of plaintiff's investment in V & S, and treated V & S "as if it was an instrumentality for his own personal use and profit." Plaintiff's complaint does not identify any specific act occurring on a particular date or within a timeframe other than 2001 to the present. Notably, plaintiff did not allege any occurrences within the three-year period before October 2020.

Plaintiff's remaining claims follow a similar pattern. Plaintiff's Count II, breach of fiduciary duty, is subject to a three-year statute of limitations, and the claim accrues "when the beneficiary knew or should have known of the breach." *Prentis Family Foundation v Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005), citing MCL 600.5805(10). Claims for breach of contract (Count III) are subject to a six-year limitations period. MCL 600.5807(9). Because statutes of limitation may apply by analogy to equitable claims, *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 127 n 9; 537 NW2d 596 (1995), by analogy, the six-year limitations period for breach of contract applies to the claim for unjust enrichment (Count IV). Tortious interference with a business opportunity (Count V) is governed by the general three-year limitations period for actions involving injury to persons or property. *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 253-254; 673 NW2d 805 (2003); MCL 600.5805(2). Fraud claims (Counts VII and VIII) are subject to a limitations period of six years.

*Citizens Ins Co of America v Univ Physician Group*, 319 Mich App 642, 651; 902 NW2d 896 (2017). Claims for conversion (Counts IX and X) are claims for recovery of damages for injury to property, and are therefore also subject to the three-year limitations period in MCL 600.5805(2). The general three-year limitations period for actions for injury to property would appear to apply to plaintiff's claim for an accounting. MCL 600.5805(2).

"Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues." MCL 600.5827. Unless otherwise provided by statute, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. "Limitations periods in tort actions begin to run at the time all elements, including damages, can be alleged in a proper complaint." *Blazer Foods*, 259 Mich App at 254. "For a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action." *The Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 123; 850 NW2d 649 (2014) (quotation marks and citations omitted). "Whether a plaintiff should have known of a cause of action is judged under an objective standard. *Prentis Family Foundation*, 266 Mich App at 45 n 2.

Plaintiff does not allege any specific acts or events committed by defendants that occurred within the three-year or six-year periods before he filed his complaint in October 2020. Again, plaintiff alleged only the general timeframe that Mrozek created Quality in 2001 and thereafter secretly and continuously competed against V & S in violation of his obligations to plaintiff and V & S. Because the alleged wrongful conduct that is at the root of plaintiff's claims is Mrozek's creation of Quality in 2001 to compete against V & S, plaintiff's claims began accruing at that time. Because plaintiff did not file this action until October 2020, all of plaintiff's claims were untimely under the applicable limitation periods of six years or less.

To support his argument that his claims were timely filed, plaintiff relies on the fraudulent-concealment statute, MCL 600.5855, which provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

"This statutory section permits the tolling of a statutory limitations period for two years if the defendant has fraudulently concealed the existence of a claim." *Mays v Snyder*, 323 Mich App 1, 39; 916 NW2d 227 (2018). "For the fraudulent-concealment exception to apply, a plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery." *Id*. at 39 (quotation marks and citation omitted).

For the fraudulent-concealment exception to apply, the plaintiff "is required to plead more than mere silence." *The Reserve at Heritage Village Ass'n*, 305 Mich App at 123. "However, '[a]n exception to [the general rule requiring an affirmative act or misrepresentation] is that there

-4-

is an affirmative duty to disclose where the parties are in a fiduciary relationship.' " *Id*. "[T]he directors of a corporation owe fiduciary duties to stockholders and are bound to act in good faith for the benefit of the corporation." *Wallad v Access BIDCO, Inc*, 236 Mich App 303, 306; 600 NW2d 664, 666 (1999).

Relying principally on *Barrett v Breault*, 275 Mich 482; 267 NW 544 (1936), plaintiff argues that Mrozek had a fiduciary duty to him, so he was not required to demonstrate an affirmative act or misrepresentation. However, plaintiff's pleadings do not establish that he and Mrozek shared the sort of fiduciary relationship as the parties *Barrett*. Unlike the plaintiff in *Barrett*, plaintiff here was not completely dependent on Mrozek. Plaintiff's allegations regarding his history with Mrozek establish that they held equal ownership in the company. Plaintiff asserted that he had greater experience in the business than Mrozek, but he relied on Mrozek to manage the day-to-day affairs of the business while plaintiff attended to his other interests.

Plaintiff was not an unsophisticated client relying on professionals for guidance. Plaintiff alleged that Mrozek stopped sharing information about V & S's operations and financial condition approximately a year after it began operations, which would have been sometime in 2002. Thus, plaintiff had knowledge as early as 2002 that Mrozek was not imparting information about V & S's operations and condition. Although plaintiff received "far less information" from Mrozek regarding V & S, plaintiff "still had faith in Mrozek" and expected Mrozek to "grow the business and act in Plaintiff's best interest as well as his own" because Mrozek was a fiduciary. It appeared to plaintiff that V & S was "heading in the right direction" although its operations were "almost completely controlled by Mrozek." Plaintiff alleged that Mrozek's tortious conduct "began to become evident" when plaintiff decided to retire. Plaintiff did not specify the date or year that he made this decision, other than to state that he decided "recently."

Moreover, plaintiff alleged that he was able to obtain information about Quality from suppliers when he began to investigate in 2020, but plaintiff did not allege any facts to explain why he was unable to obtain this same information sooner, despite his admitted knowledge that Mrozek was not freely sharing information about V & S's financial condition as early as 2002. Plaintiff essentially admitted that he neglected V & S's affairs for almost two decades, despite knowing that Mrozek had become less communicative with business information. Under these circumstances, the bare fact of a corporate director's fiduciary duty to a 50-percent shareholder does not trigger application of the fraudulent-concealment statute.

Plaintiff also argues that the trial court erred by failing to apply the doctrine of equitable estoppel. The doctrine of equitable estoppel arises when

> "(1) a party by representation, admissions, or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) the other party will be prejudiced if the first party is permitted to deny the existence of the facts." [*Twp of Williamstown v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262, 270 (2018), quoting *Howard Twp Bd of Trustees v Waldo*, 168 Mich App 565, 575; 425 NW2d 180 (1988).]

"Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).

The trial court did not err by finding that equitable estoppel did not apply. Plaintiff was not justified in assuming for 20 years that Mrozek was fulfilling his duty of loyalty to V & S. Plaintiff alleged that Mrozek became less reliable in reporting V & S's progress around 2020. Plaintiff's failure to conduct his own due diligence and periodically monitor the business during this period does not estop defendants from asserting the statute of limitations.

Plaintiff next argues that if the trial court correctly ruled that fraudulent concealment and equitable estoppel do not bar defendants from asserting a statute-of-limitations defense, he should still be allowed to proceed with his claim for any damages within the limitations period for each claim. This Court has recognized that "the continuing-wrongs doctrine," which holds that when a claim of wrongful conduct "is of a continuing nature, the period of limitations does not begin to run on the occurrence of the first wrongful act; rather, the period of limitations will not begin to run until the continuing wrong is abated," has been expressly abrogated in civil rights cases and cases involving nuisance and trespass. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 280, 285-286; 769 NW2d 234 (2009). In *Blazer Foods*, 259 Mich App at 251, 255, this Court likewise declined to apply the continuing-wrongs doctrine to a claim arising from a party's failure to adequately perform contractual obligations or to a tortious-interference claim.

Plaintiff denies that he is invoking the "continuing-wrongs doctrine," and argues that the trial court erred by assuming that all of plaintiff's causes of actions accrued on April 4, 2002, when Mrozek formed Quality. Plaintiff states that this Court's decision in *Sunrise Resort Assoc, Inc v Cheboygan Co Road Comm*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 354540), lv pending, demonstrates how abrogation of the continuing-wrongs doctrine does not preclude him from recovering for defendants' continuous tortious actions during the limitations period. In *Sunrise Resort*, the plaintiffs alleged that the defendant's modification of a storm drain system in 2015 caused a backup that resulted in minor damage to their property in 2016. In 2018, a system backup caused significant damage to the plaintiffs' properties. The plaintiffs filed suit for damages in 2020. *Id*. at ___; slip op at 2. The defendant argued that the plaintiffs' "sewage-disposal-system-event exception claim was barred by the applicable three-year statutory period of limitations and by plaintiff's failure to provide timely notice of their claim, as required by MCL 691.1419." *Id*. at ___; slip op at 2. The trial court ruled that the plaintiffs' claim accrued in 2015 when the first backup occurred, and therefore was not timely. *Id*. at ___; slip op at 2. This Court held that the plaintiffs' claim under the sewage-disposal-system-event exception to governmental immunity accrued when the system event occurred and damages were sustained. The backup event in 2018 was a distinct event causing a new occurrence of damage. Therefore, because the plaintiffs' complaint was "premised on a specific, discrete backup event that occurred on May 4, 2018," which did not cause harm to the plaintiffs until 2018, the plaintiffs "could not have brought their claim any earlier. Therefore, plaintiffs' claim accrued in 2018." *Id*. at ___; slip op at 6. This Court rejected the defendant's argument that the plaintiffs were "attempting to apply the now-abrogated common-law 'continuing wrongs doctrine.' " This Court concluded that "the abrogation of the continuing-wrongs doctrine has no relevance in this case" because the plaintiffs were not

attempting to rely on the harm caused in 2018 to bring damage from the 2015 event within the limitations period. *Id*. at ___; slip op at 7.

*Sunrise Resort* is not applicable to plaintiff's complaint. Plaintiff did not allege any distinct incidents, occurrences, losses, or injuries that occurred within the limitations period, unrelated to defendants' alleged conduct that began in 2001. Plaintiff stated the general timeframe of "approximately 2001 to the present" for his shareholder-oppression claim. He did not state timeframes for the remaining counts. Therefore, plaintiff's reliance on *Sunrise Resort* is misplaced.

For these reasons, the trial court did not err by ruling that all of plaintiff's claims were barred by the applicable statutes of limitation. Given this holding, we need not address the vast majority of additional issues raised by plaintiff on appeal.[1] We address the issue that does not hinge solely on the applicable statutes of limitation below.

### III. DISCOVERY SANCTIONS

Plaintiff challenges the trial court's finding that plaintiff committed discovery violations and sanctioning him for the same. A trial court's decision whether to impose a discovery sanction is reviewed for an abuse of discretion. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Jilek v Stockson (On Remand)*, 297 Mich App 663, 665; 825 NW2d 358 (2012) (quotation marks and citation omitted). The court's underlying findings of fact are reviewed for clear error. "A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 660; 819 NW2d 28 (2011) (quotation marks and citation omitted).

The trial court granted defendants' initial motion to compel production of documents after plaintiff failed to respond to defendant's request for production of documents. Thereafter, plaintiff served a response that stated, in substance, that defendants already had possession of all documents on which plaintiff intended to rely to support his claims. Defendant thus filed a second motion to compel responses and the trial court issued a second order requiring plaintiff to identify each document required to be produced and to indicate the discovery request that it pertained to. Plaintiff then produced a flash drive purportedly containing the documents, but without clear

---

[1] With respect to plaintiff's argument that he should have been permitted to file a third amended complaint containing a newly pleaded claim of silent fraud, we believe the that plaintiff's allegations establish the general basis for a silent-fraud claim against Mrozek. However, fraud claims are subject to a six-year limitations period. *Citizens Ins Co of America*, 319 Mich App at 651. Because it was apparent from the face of plaintiff's proposed third amended complaint that his silent-fraud claim was based on a duty to disclose that would have arisen more than six years before plaintiff filed this action, and because the complaint did not contain any allegations that would support an inference that plaintiff was unable to discover Mrozek's involvement with Quality, a competing company, before the two-year period immediately preceding the filing of this action, the trial court did not err by concluding that any amendment to add a silent-fraud claim would be futile because it too would be barred by the statute of limitations.

identification. Defendant thereafter filed a motion to dismiss plaintiff's action for failing to comply with the trial court's prior orders.

In a May 11, 2021 order, the trial court denied defendant's motion to dismiss, but found that plaintiff "blatantly violated the April 14, 2021 order by 'failing to specify with detail which documents he intends to rely upon . . . ' " and awarded defendant reasonable attorney fees and costs for having to file two motions to compel. The court also directed plaintiff to list the title or a description of each document produced, including applicable dates and other identifying information for each document. The trial court did not specify the amount of sanctions awarded, but instead stated that the amount of sanctions "shall be fixed by stipulation or upon a motion." No formal stipulation or motion concerning the reasonable attorney fees and costs appears in the register of actions. However, in a May 14, 2021 email exchange between the parties, defendant's counsel indicated that the sanctions amounted to $2,840 and plaintiff's counsel indicated that he would send defendant's counsel a check. There has been no assertion that the sanctions were not, in fact, paid by plaintiff.

Thereafter, defendant filed a second motion to dismiss and/or enforce the court's May 11, 2021 order compelling plaintiff to properly respond to defendant's request for production. The trial court again denied defendant's motion to dismiss, but imposed a sanction of $1,000 for failing to comply with its previous orders. Plaintiff argues that the trial court erred by finding that his responses did not comply with the court's discovery orders.

MCR 2.310(C)(5) requires a party producing documents to "produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." MCR 2.310(C)(5). MCR 2.313(B)(2) provides sanctions for violations of discovery orders, including imposing attorney fees and costs against the noncompliant party, the party's counsel, or both. MCR 2.313(B)(2)(d).

Plaintiff argues that the flash drive had a neatly organized list of folders, divided into subfolders, that clearly correlated each folder or subfolder with each numbered request in defendant's request for production of documents. He argues that it should have been obvious to defense counsel how to locate the specific documents for each specific request. We disagree.

Notably, defendants filed two motions to compel responses to its requests for production before plaintiff provided the flash drive. Plaintiffs initially failed to respond to the request for production and then when ordered to respond provided only a generic response. Given that it took three motions, two orders, and several months for defendants to obtain even a minimal response to their request for production of documents, the first award of costs and fees was not an abuse of the trial court's discretion.

In conjunction with its first sanctions award, the trial court directed plaintiff to list "the title (or other description) of each document, including applicable dates and other identifying information" of each document in connection with each request for production. The index on the flash drive that plaintiff submitted consists of labels such as "211 demand deposit cabinet signa…", "LOANS CABINET PROMISSORY NOT…", "checks," "Deposits," and "payments." This does not identify specific documents or correlate specific items to the specific requests for documents and the indices were not well organized or well labeled.

Additionally, for Document Request #1, documents that support Paragraph 23 of the SAC, plaintiff replied, "Each document currently in Plaintiff's possession and on which Plaintiff currently relies in response to this request is each and every document forming part of Exhibits 'A-1 through A-11' in the flash drive provided herewith." For Document Request #2, plaintiff referred to "each and every document forming part of Exhibits 'A-1' through 'A-11' and each and every document forming part of Exhibit 'B' in the flash drive . . . ." Similarly, plaintiff's response for Document Request #3 refers to every document in Exhibit A-1 through A-11, and all of Exhibit B. Plaintiff's response to Document Request #4 refers to all documents in Exhibit C. His response to Document Request #5 refers to all of Exhibits A-1 through A-11, and Exhibit B. His response to Document Request #6 refers to Exhibit C. The remaining answers follow this pattern, with the exception of plaintiff's Response to Document Request #7, which refers to two specific letters in Exhibit A-11, and one letter in Exhibit A-10.

Exhibit 3 to Plaintiff's answer to defendants' motion for enforcement of the court's discovery orders shows the list of folders labeled Exhibit A-1 through Exhibit A-11, Exhibit B, and Exhibit C. Exhibit 4 shows the list of documents for each of the A-1 through A-3 subfolders. Plaintiff showed the first page of each document in Subfolders A-4 through A-11, and Exhibits B and C.

While the answers to the discovery requests referred defendants to multiple folders of documents that applied to multiple requests, it does not appear that plaintiff was attempting to flout the trial court's order. Plaintiff made an effort to winnow down the folders and exhibits applicable to the requests for production to avoid providing duplicate copies of the same documents and to ensure that defendants received and were able to locate (within reason) the specific documents contained on the flash drive. Plaintiff thus complied with the spirit of the May 11, 2021 order, if not the exact language. And defendants do not assert that they are missing documents; they argue that it was difficult to determine which documents responded to which document request. To the extent that plaintiff did not fully comply with the trial court's May 11, 2021 order, there is no indication that plaintiff did so intentionally or with an intent to confuse defendants. Thus, the trial court abused its discretion in sanctioning plaintiff $1,000 in its June 1, 2021 order and we reverse and vacate only that portion of the trial court's order.

## IV. REASSIGNMENT TO DIFFERENT JUDGE

In his final issue, plaintiff argues that this case should be reassigned to a different judge on remand. However, because we are affirming all but one of the trial court's orders, remand is not necessary. Therefore, this issue is moot and need not be considered.

We vacate the trial court's sanction of $1,000 against plaintiff in its June 1, 2021 order and affirm in all other respects.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates